**FILED**
**July 7, 2016**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WASHINGTON FEDERAL, National Association, | ) ) ) | No. 33176-8-III (consolidated with 33630-1-III) |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| AZURE CHELAN LLC, a Washington limited liability company, | ) ) ) | |
| Respondent. | ) ) | |

KORSMO, J. — A senior lienholder never sought to foreclose its interest on a stalled development, while the successor to the junior lienholder did so. After the trial court quieted title in the junior lienholder, the senior lienholder appealed to this court. We affirm.

## FACTS

This litigation has its origins in a plan to develop property known as Lake Hills Estates, a 168-acre tract near the Chelan Public Golf Course. Jack Cole acquired the property in 2005 with the intent to develop residential homes on the property. To that end, he created Lake Hills Development Division 1, LLC (LHDD1). LHDD1 had two equity holders, one of which was Azure Chelan, LLC (Azure). Mr. Cole was the principal in Azure.

LHDD1 began development of the property in 2005. The parties intended to develop the property in multiple phases. The first phase (Phase 1) would consist of 86 residential lots on the first 46-acre portion of the land. Only when Phase 1 was completed would the company begin work on Phase 2. Phase 2 would include 120 planned lots on the remaining 122 acres.

In 2007, the other equity holders in LHDD1 offered to buy out Azure's interest. Azure agreed to sell its 51 percent stake in the company for a 5.5 million dollar promissory note, secured by a deed of trust on Phase 2 of the property. On February 14, 2007, Azure and LHDD1 closed the buyout, signing an Equity Redemption Agreement, Promissory Note, and Deed of Trust (Azure's Deed of Trust).

Azure's Deed of Trust contained a no-further-encumbrances clause in Section 4 addressing "Covenants and Representations of Grantor." It states, "Grantor covenants, and agrees" and then lists a number of subsections. Section 4.11 deals with further encumbrances:

> 4.11 <u>Sale, Transfer, or Encumbrance of Property</u>. Grantor shall not, without the prior written consent of Beneficiary, sell, transfer, or otherwise convey the Property or any interest therein, *further encumber the Property* or any interest therein, cause or permit any change in the entity, ownership, or control of Grantor or agree to do any of the foregoing *without first repaying in full the Note and all other sums secured hereby.* Consent to any one such occurrence shall not be deemed a waiver of the right to require consent to any future occurrences.

Clerk's Papers (CP) at 27 (emphasis added).

2

The intent of having Azure's deed only encumber Phase 2 was that it left Phase 1 unencumbered for the purposes of later securing a building loan. Notwithstanding the no-further-encumbrances clause, in May 2007, LHDD1 obtained a building loan from Horizon Bank, which it secured via a deed of trust (Horizon's Deed of Trust) on the entire property, including Phase 2.

In 2007, LHDD1 defaulted on its obligations to Azure. The record contains an unsigned "Notice of Events of Default," purportedly sent in March 2007. This notice lists both monetary and nonmonetary defaults. The record also contains an unsigned "Supplemental Notice of Events of Default," purportedly sent in April 2007. Further, the record contains an unsigned "Notice of Default." Finally, the record contains dated and signed notices of events of default from May 2007 and October 2008. These notices state that a "Notice of Default under RCW 61.24 for foreclosure" was "served on LHDD1 on April 30, 2007."

The copy of the Notice of Default contains several statements about the promissory note. Specifically, it lists the various defaults and states the "Total Amount Due" as 6,116,545.07 dollars. This number includes the "Accelerated balance due under Promissory Note" of 5,656,151.29 dollars. The Notice of Default also discusses the consequences of the default:

> 6.  Consequences of Default:

3

(a)     The entire unpaid balance of the Promissory Note executed February 14, 2007, with the principal amount of $5,500,000.00, plus all accrued interest and all other amounts that may be owing thereunder are immediately due and payable.

(c)     Failure to cure every default within thirty days of the mailing of this notice, or if personally served, within thirty days of the date of personal service thereof, may lead to recordation, transmittal and publication of a Notice of Trustee's Sale, and the property . . . may be sold at public auction at a date no less than 120 days in the future.

CP at 314. Notwithstanding this Notice of Default, and the various Notices of Events of Default, Azure has never attempted to foreclose the property. Azure's only statements on the issue are as follows: First, "Defendant Azure chose to accept the actions, assurances and other commitments of LHDD1 rather than initiate foreclosure"; and second, "in each event [of default] Azure elected to accept verbal assurances from LHDD1 as supporting a cure or excuse of those events of default."

Horizon Bank failed in January 2010 and Washington Federal acquired the loan from FDIC receivership, becoming the beneficiary under Horizon's Deed of Trust. Eventually, LHDD1 defaulted on its obligations under the loan. Washington Federal directed the trustee to foreclose on the deed and acquired the property at the nonjudicial foreclosure sale on January 7, 2011. Washington Federal recorded its deed on January 14, 2011.

In June 2014, Washington Federal brought the present action to quiet title in the Lake Hills Property. Four months later it subsequently amended its complaint to raise

4

RCW 7.28.300, arguing that the statute of limitations had run on Azure's note. Azure defended the complaint and also raised several counterclaims. Washington Federal moved for summary judgment on its quiet title claim under RCW 7.28.300.

The trial court requested supplemental briefing when it noted discrepancies between the legal description contained in Horizon's Deed of Trust and the deed Washington Federal received from the trustee at the foreclosure sale. Azure consulted a surveyor, who indicated that the differences in the legal descriptions are "profound." However, neither the surveyor's report nor his declaration appears in the record.

The court ultimately granted the motion for summary judgment and quieted title to the property in Washington Federal using the legal description in Horizon's Deed of Trust rather than that contained in Washington Federal's deed. Azure appealed the decision to this court.

Washington Federal subsequently moved for summary judgment on Azure's counterclaims. The trial court granted that motion and Azure again appealed to this court. The two appeals were consolidated at Azure's request. The combined matters were then heard at oral argument.

## ANALYSIS

The appeal from the summary judgment ruling presents four issues for our consideration. First, Azure argues that Washington Federal did not have standing to quiet title under RCW 7.28.300 because it is not the "owner" of the property as contemplated

5

by that statute. Second, it claims that the Azure Deed of Trust disabled LHDD1 from

making any further encumbrances, thus voiding the trustee's deed. Third, Azure argues

that the trustee illegally changed the legal description in its deed when Washington

Federal purchased the property at the foreclosure sale, making Washington Federal's

deed void. Finally, Azure argues that questions of fact remain concerning when Azure

accelerated its note, and thereby, when the statute of limitations actually expired. We

address the contentions in the order stated.[1]

Very well-settled standards govern review of summary judgment proceedings.

We review a summary judgment order de novo, engaging in the same inquiry as the trial

court. *Beal Bank, SSB v. Sarich*, 161 Wn.2d 544, 547, 167 P.3d 555 (2007). Summary

judgment is proper if, viewing the facts and reasonable inferences most favorably to the

nonmoving party, no genuine issues of material fact exist and the moving party is entitled

to judgment as a matter of law. CR 56(c); *VersusLaw, Inc. v. Stoel Rives, LLP*, 127 Wn.

App. 309, 319-20, 111 P.3d 866 (2005). "A material fact is one upon which the outcome

of the litigation depends." *Kim v. O'Sullivan*, 133 Wn. App. 557, 559, 137 P.3d 61

(2006). "When material issues of fact exist, they may not be resolved by the trial court

---

[1] Azure filed a five page response to a Statement of Additional Authorities filed by the respondents. We grant respondents' motion to strike the response. A statement of additional authorities should not include any argument. RAP 10.8. An argumentative response to a proper Statement of Additional Authorities is not authorized.

and summary judgment is inappropriate." *Halvorsen v. Ferguson*, 46 Wn. App. 708, 712, 735 P.2d 675 (1986).

*Standing under RCW 7.28.300*

Initially, Azure argues that Washington Federal is not the "owner" under the deed of trust quiet title statute, and thus, cannot avail itself of the owner's power to quiet title. This issue presents a question of statutory interpretation. Because the plain meaning of the statute includes the purchaser at a foreclosure sale, the argument fails.

Appellate courts review a question of statutory interpretation de novo. *State v. Bradshaw*, 152 Wn.2d 528, 531, 98 P.3d 1190 (2004). The court begins by looking at the plain meaning of the statute as expressed through the words themselves. *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 164 Wn.2d 310, 317, 190 P.3d 28 (2008). The court considers the text of the specific provision, surrounding provisions, and the statutory scheme as a whole. *State v. Garcia*, 179 Wn.2d 828, 836-37, 318 P.3d 266 (2014). If the statute's meaning is plain on its face, the court applies that meaning. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). Only if the language is ambiguous does the court look to aids of construction, such as legislative history. *Id.* at 110-111. A provision is ambiguous if it is reasonably subject to multiple interpretations. *State v. Engel*, 166 Wn.2d 572, 579, 210 P.3d 1007 (2009).

Here the statute's meaning is plain. RCW 7.28.300 specifically refers to the *record owner* of the property:

> The *record owner* of real estate may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations, and, upon proof sufficient to satisfy the court, may have judgment quieting title against such a lien.

(Emphasis added.) "Record owner" is defined in *Black's Law Dictionary*: "A property owner in whose name the title appears in the public records." BLACK'S LAW DICTIONARY 1280 (10th ed. 2014). We conclude that one who purchases property at a foreclosure sale and records the deed is the "record owner" and can avail itself of the quiet title provision of the statute.

This interpretation of RCW 7.28.300 is consistent with *Westar Funding, Inc. v. Sorrels*, 157 Wn. App. 777, 239 P.3d 1109 (2010). There, Division Two of this court addressed a case involving two lienholders. The first lienholder's (Sorrels') interest was from a 1992 deed of trust. *Id.* at 779. The deed secured a 1992 promissory note that matured after two years. *Id.* However, the owner did not pay Sorrels when the note matured in 1994, and Sorrels took no action to foreclose. *Id.* In 1995, the owner executed a deed conveying the property to Sorrels as trustee for a trust. *Id.* Then in 2002, Sorrels (as trustee) borrowed money from Westar Financial and secured the loan with a deed on the property. *Id.* at 780. Eventually, the trust defaulted on its obligations; Westar Financial foreclosed, and the lender (Xui) purchased at the foreclosure. *Id.* at 781-782. Sorrels then attempted to foreclose his lien secured by the 1992 deed of trust.

8

*Id.* at 782. Westar Financial and Xui brought an action to enjoin the sale and to quiet title under RCW 7.28.300. *Id.* at 782.

Sorrels argued that Westar Financial and Xui (as plaintiffs) could not plead RCW 7.28.300 because only defendants may do so. Division Two summarily rejected this argument:

> Sorrels's argument conflicts with RCW 7.28.300's plain language. . . . *Xui is a record owner of the Gig Harbor property.* As such, RCW 7.28.300 authorizes him to maintain an action to quiet title of that property.

*Id.* at 785 (emphasis added). Division Two ultimately affirmed the trial court and quieted title in Xui. *Id.* at 786. Even though Xui only obtained title by purchasing the property at a junior lienholder's foreclosure sale, the court agreed that Xui became the record owner of the property and could quiet title under RCW 7.28.300. *Id.*

This case presents substantially similar facts. Washington Federal purchased the property at the nonjudicial foreclosure sale, which foreclosed its junior lien. Then, Washington Federal properly recorded its deed, becoming the record owner of the property. Sometime later, Washington Federal sued to quiet title, asserting, inter alia, RCW 7.28.300. Both the plain meaning of RCW 7.28.300 and *Westar Financial* indicate that Washington Federal, as the present owner, can use this statute to quiet title.

Azure also argues that to prevail under RCW 7.28.300, Washington Federal would be asserting LHDD1's statute of limitations defense, which it does not have standing to do because Washington Federal was not a party to the agreement between Azure and

LHDD1. Appellant's Br. at 21.[2] Azure, however, ignores both the equitable nature of the quiet title action and the plain meaning of "record owner" under RCW 7.28.300. An action to quiet title is an equitable proceeding "to resolve competing claims of ownership." *Kobza v. Tripp*, 105 Wn. App. 90, 95, 18 P.3d 621 (2001). "Standing to assert a claim in equity resides in the party entitled to equitable relief; *it is not dependent on the legal relationship of those parties.*" *Smith v. Monson*, 157 Wn. App. 443, 445, 236 P.3d 991 (2010) (emphasis added). Further, the statute specifically refers to the party able to bring the quiet title action as the "record owner." RCW 7.28.300. Nothing in the statue suggests the "record owner" must also be a "contracting party." *Id.*

The trial court did not err in concluding that Washington Federal had standing as the purchaser of property at a foreclosure sale to quiet title under RCW 7.28.300.

*Horizon's Deed of Trust*

Azure next argues that Horizon's Deed of Trust is void because Azure's Deed of Trust restricted LHDD1 from further encumbering the property. The parties, however, dispute what effect this no-further-encumbrances clause had. Azure argues that it was a disabling clause, rendering any subsequent purported encumbrance void. Washington

---

[2] Azure's argument on this point is somewhat inconsistent: it concedes that "RCW 7.28.300 provides a narrow exception to the general rule that one creditor may not invoke the debtor's personal statute of limitations defense." Appellant's Reply Br. at 6.

Federal argues that it is a due-on-encumbrance clause, making a further encumbrance merely a breach of the contract, warranting acceleration.

We believe the language of this clause more closely mirrors a due-on-encumbrance clause than a disabling clause. Further, public policy disfavors finding an ambiguous clause as disabling. Finally, the course of conduct between the parties indicates that Azure believed this to be a promissory restriction rather than a disabling restraint. For all three of those reasons, we reject Azure's argument.

To understand the distinction between the two interpretations, some background on the types of restraints on alienation is useful. Owners generally have the power to alienate their property. 3 JOHN A. BORRON, JR., SIMES & SMITH: THE LAW OF FUTURE INTERESTS § 1111, at 2 (3d ed. 2002) (SIMES & SMITH). Any restriction on that power is treated as a restraint on alienation. *Id.* There are three types of direct restraints that can occur: (1) a disabling restraint, (2) a forfeiture restraint, and (3) a promissory restraint. 3 SIMES & SMITH § 1131, at 13-14. A disabling restraint expressly prohibits alienation and renders any purported alienation void; e.g., the grantee may not sell the property; or any attempt to sell the property shall be null and void. *Id.* § 1136, at 18. A forfeiture restraint has express language in the deed, such that the property reverts on a stated condition, which in effect prohibits alienation—e.g., to A, but if A sells the property, O may reenter and retake. *Id.* § 1147, at 43-44. Finally, a promissory restraint involves a covenant not to alienate, which allows the grantor to recover damages upon its breach, e.g., where

11

adjoining property owners promise to themselves not to convey property without consent of the other. RESTATEMENT (FIRST) OF PROPERTY § 404 cmt. g (1944). Only disabling restraints and promissory restraints are at issue here.

Disabling restraints are disfavored by public policy. Historically, any purported disabling restraint on a fee interest was itself void as repugnant to the fee. *Id.* at § 405. If a clause in a contract or deed was ambiguous with regard to the type of restraint, then courts avoided interpreting it as a disabling restraint because disabling restraints are generally void. *Id.* at § 419. However, no Washington cases address disabling restraints in the context of a further encumbrance on the property. It is possible that Washington would allow a disabling restraint in that context.[3] Generally, Washington law allows a party to place multiple encumbrances on its property via deeds of trust. 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 20.6, at 410-411 (2d ed. 2004).

We believe the type of restraint in question here is a promissory restraint. Section 4 of Azure's Deed of Trust refers to "Covenants and Representations of Grantor," and

---

[3] *See, e.g.*, *Alby v. Banc One Fin.*, 156 Wn.2d 367, 372-374, 128 P.3d 81 (2006) (allowing a *forfeiture* restraint involving future encumbrances); *Miller v. Pac. First Fed. Sav. & Loan Ass'n*, 86 Wn.2d 401, 403, 545 P.2d 546 (1976) (stating the later rule that "reasonable restraints that are justified by legitimate interests of the parties are not necessarily void").

states that "Grantor covenants, and agrees" and then lists a number of subsections.

Clerk's Papers (CP) at 26-27. Section 4.11 deals with further encumbrances:

> 4.11 <u>Sale, Transfer, or Encumbrance of Property</u>. Grantor shall not, without the prior written consent of Beneficiary, sell, transfer, or otherwise convey the Property or any interest therein, *further encumber the Property* or any interest therein, cause or permit any change in the entity, ownership, or control of Grantor or agree to do any of the foregoing *without first repaying in full the Note and all other sums secured hereby*. Consent to any one such occurrence shall not be deemed a waiver of the right to require consent to any future occurrences.

CP at 26-27 (emphasis added). On its face, this appears to be a promissory restraint. It specifically refers to "covenants and agrees," and references "first repaying in full the Note." Further, it is distinct from a disabling restraint in that it is not categorical. It does not say that "no further encumbrances shall be allowed" or "any further encumbrances are null and void." Given the preference for reading this clause as a promissory restraint rather than a disabling restraint, Horizon's Deed of Trust was not void.

Azure cites a New York case with a similar provision to argue that the clause here is in fact a disabling restraint, rendering the encumbrance void. Appellant's Reply Br. at 10-12 (citing *BMM Four, LLC v. BMM Two, LLC*, 48 Misc. 3d 1201(A), 18 N.Y.S.3d 577, 2015 NY Slip Op 50917 (Sup. Ct.) (unpublished opinion). *BMM* is an unreported trial court decision from New York. It deals with a lien holder (JP Morgan Chase) attempting to block an attempted partition of property, using a clause in its mortgage that was substantially similar to the clause at issue here. *BMM*, 48 Misc. 3d 1201(A) at *1,

13

*4. JP Morgan Chase argued that a wife's transfer of her ownership interest in the property to her husband was without legal effect because JP Morgan Chase did not consent, as required by the mortgage. *Id.* at *1. The trial court recognized that JP Morgan Chase had an interest in the property and could enforce its mortgage provision. *Id.* at *5. However, finding a tacit agreement in the briefing, the court ultimately allowed sale of the property for partition so long as the sale protected JP Morgan's interest by fixing a minimum bid price that would satisfy the mortgage in full. *Id.*

To the extent *BMM* is persuasive, it does not support Azure's argument. While the court explicitly recognized JP Morgan Chase's rights under the mortgage, the court *implicitly* rejected the argued effect of the mortgage provision. In *BMM*, JP Morgan Chase argued that Michael Otis, the man requesting the partition action, was without standing because his wife signed the mortgage documents and operating agreements, which were never legally transferred to him. *Id.* at *2. Specifically JP Morgan Chase argued that it never gave its permission to transfer the ownership (as required by the mortgage clause), and thus the transfer was "without legal effect." *Id.* The trial court implicitly rejected this argument, however, by allowing the partition sale to go forward. If the transfer to Michael Otis was indeed "without legal effect" because of the terms of the mortgage, then the partition sale could not have been allowed to proceed because the conveyance *to Mr. Otis* would have been void and he would have had no interest to assert. Thus, by allowing the partition sale, the court implicitly held that the transfer was

14

*not* void.

The *BMM* case is also distinguishable. In *BMM*, JP Morgan Chase was never given notice of the transfer and only was first able to assert its interest in the partition action. *See id.* at *2. Thus, JP Morgan Chase consistently argued that the transfer was void. Here, however, Azure had been aware of the further encumbrances and did not consistently treat them as void. In fact, Azure's conduct indicates this clause is merely a promissory restraint. Azure sent LHDD1 several notices of events of default. In many of them, Azure listed the encumbrances on the property as events of default under the deed of trust, and indicated that if the defaults were "not cured," "the entire amount of the Commercial Promissory Note shall be due and immediately payable." CP at 371-373, 374, 376-377, 378-386. Azure never suggested it believed these further encumbrances were null and void. Azure's treatment of the additional encumbrances as events of default when dealing with LHDD1 strongly suggests that even it believed the conduct merely constituted a breach, and not that those encumbrances were null and void.

The no-further-encumbrances clause in Azure's deed is not a disabling restraint rendering the trustee's deed void.

*Changed Legal Description of the Deed*

Azure also argues that the Washington Federal deed is void because the trustee changed the description of the property when it conveyed the Horizon Deed. Although we agree with Azure that the trustee for a deed of trust was *not* empowered to change the

15

legal description of the deed, that determination does not aid Azure. The legal description in Azure's Deed of Trust exactly matched the description in Horizon's Deed of Trust. Thus, the trustee in fact sold the very property that Azure claims. Further, the court quieted title in Washington Federal using the legal description in the original deed of trust, not the changed description in the deed conveyed by the trustee. Therefore, any difference between the two deeds had no practical effect.

The trustee for a deed of trust is not empowered to change the legal description of the deed. RCW 61.24.050 requires that "the trustee's deed shall convey all of the right, title, and interest in the real and personal property sold at the trustee's sale which the grantor had or had the power to convey at the time of the execution of the deed of trust." While this issue has not come up in the context of trustees in Washington, there was a similar situation involving a treasurer issuing a deed after a tax foreclosure proceeding. *See Matthews v. Morrison*, 195 Wash. 288, 290-291, 80 P.2d 856 (1938). In *Matthews*, the treasurer changed the property description from what the deed had originally stated, correcting an omission of the section, township, and range. *Id.* at 292. The court concluded that "[t]he treasurer was not vested with the authority to give a deed to property other than as described in the foreclosure proceeding and decree." *Id.* The court's conclusion appears to stem from the ministerial nature of the treasurer's powers.[4]

---

[4] Ultimately, the court voided the entire tax foreclosure because it was unclear from the record that the court had jurisdiction over the property based on an improper

16

The reasoning of *Matthews* extends to trustees. By conveying its deed at the close of a trustee sale, the trustee is likewise engaging in a ministerial act. *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 911, 154 P.3d 882 (2007) ("The trustee's delivery of the deed to the purchaser is a ministerial act, symbolizing conveyance of property rights to the purchaser."); *see also* RCW 61.24.050. Further, even where the trustee knows that the title is defective, "the trustee must still on proper demand proceed to sell such title as he took." *McPherson v. Purdue*, 21 Wn. App. 450, 452, 585 P.2d 830 (1978) (internal quotation marks omitted). If the trustee's deed is somehow improper, one procedure is to convey the deed as written, and permit the new owner to attempt to reform the deed. *See, e.g., GLEPCO, LLC v. Reinstra*, 175 Wn. App. 545, 556-557, 307 P.3d 744 (2013) (reforming deed of trust purchased at trustee's sale). Therefore, it is improper for the trustee unilaterally to change the deed prior to conveying it to the purchaser.

Here, the trustee changed the legal description when it conveyed the deed to Washington Federal. While this action was probably improper under *Matthews*, it does not control the outcome of this case. Even where no deed is conveyed from a foreclosure sale, the highest bidder still becomes the *equitable* owner of the property and can bring an action to quiet title. *See Udall*, 159 Wn.2d at 907-908 (affirming trial court's judgment quieting title in highest bidder at a foreclosure auction, who brought quiet title action

---

property description. *Matthews*, 195 Wash. at 292.

after escrow service refused to convey deed). Even if the trustee erred by unilaterally changing the deed's legal description, Washington Federal still became the owner of the property and, thus, could quiet title.

Further, there is no dispute that the trustee was selling the very property that Azure claims. Azure admits that the legal description in the trustee deed (with regard to Phase 2) is identical to the legal description in Azure's Deed of Trust. Br. of Appellant at 26 n.48 ("[T]he property description that Horizon Bank used to describe Phase 2 in its Deed of Trust was identical to that in Azure's Deed of Trust."). The trustee was therefore empowered and required to sell the property controlled by Azure's Deed of Trust. RCW 61.24.050. The trustee held the foreclosure sale, and Washington Federal purchased the property. From this, Washington Federal became the owner of the entire property, including Phase 2. In addition, and perhaps recognizing the peculiarity of this situation, the trial court quieted title using the original legal description from Horizon's Deed of Trust, not the modified legal description in Washington Federal's Deed of Trust. Therefore, any difference between the two is immaterial at this point.

Finally, there are no facts to suggest that the "new" legal description describes anything other than the same Phase 2 property as the old legal description. Azure argues that they had a land surveyor look at the different legal descriptions, and he indicated that there were "'profound'" differences. Appellant's Reply Br. at 14 (quoting CP at 423). The record, however, shows that this statement is inadmissible hearsay and could not be

18

relied on for summary judgment. Azure's counsel is merely quoting the land surveyor.

Neither the land surveyor's declaration nor any report is present in the record.

"[E]vidence submitted in opposition to summary judgment must be admissible.

Unauthenticated or hearsay evidence does not suffice." *SentinelC3, Inc. v. Hunt*, 181

Wn.2d 127, 141, 331 P.3d 40 (2014) (internal citations omitted) (rejecting on summary

judgment hearsay evidence on the value of shares of a closely held corporation).

Accordingly, the change in description had no effect on this action.

*Question of Fact Concerning Acceleration*

Finally, Azure argues that questions of fact exist concerning when it accelerated

its lien, thus preventing summary judgment because it is unclear when the statute of

limitations began to run. Azure failed to meet its burden of establishing that material

questions of fact exist on this issue.

A party opposing a motion for summary judgment may not rely on speculation or

argumentative assertions that unresolved factual issues remain. *Seven Gables Corp. v.

MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). The nonmoving party must

set forth specific facts that sufficiently rebut the moving parties' contentions and disclose

that a genuine issue as to a material fact exists. *Id.* Ultimate facts or conclusions of fact

are insufficient; conclusory statements of fact will not suffice. *Grimwood v. Univ. of

Puget Sound, Inc.*, 110 Wn.2d 355, 359-360, 753 P.2d 517 (1988).

19

For a deed of trust, the six-year statute of limitations begins to run when the party is entitled to enforce the obligations of the note. RCW 4.16.040; *see Westar Funding*, 157 Wn. App. at 784. This can occur either immediately for a demand note, when the note naturally matures, or when the party accelerates the note through breach or some other clause in the note. *See Hopper v. Hemphill*, 19 Wn. App. 334, 335-336, 575 P.2d 746 (1978); *Westar Funding*, 157 Wn. App. at 784; 31 RICHARD A. LORD, WILLISTON ON CONTRACTS § 79:17, at 338; § 79:18 at 347-350 (4th ed. 2004). If the lender elects to accelerate the debt after a breach, the acceleration must be clearly and unequivocally expressed to the debtor. *Weinberg v. Naher*, 51 Wash. 591, 594, 99 P. 736 (1909); *Glassmaker v. Ricard*, 23 Wn. App. 35, 38, 593 P.2d 179 (1979).

Here, the dispute centers over when Azure accelerated its loan, and whether Azure abandoned any purported acceleration. To support summary judgment, Washington Federal submitted a drafted Notice of Default, which was prepared sometime in April 2007. Azure argues that because this notice is unsigned and undated there is no indication that it was actually sent. However, Azure itself submitted multiple notices of events of default, which are signed and dated. CP at 378-387, 389-393. Two of these documents make reference to the Notice of Default being served on LHDD1 on April 30, 2007. CP at 378, 390 ("Notice of default under RCW 61.24 for foreclosure served on LHDD1 on April 30, 2007"). Further, the April 2007 Notice of Default lists the various defaults and states the "Total Amount Due" as 6,116,545.07 dollars. CP at 313. This

number includes the "Accelerated balance due under Promissory Note" of 5,656,151.29

dollars. CP at 313. The Notice of Default also more explicitly spells out the

consequences of the default:

> 6. Consequences of Default:
>
> (a)    The entire unpaid balance of the Promissory Note executed February 14, 2007, with the principal amount of $5,500,000.00, plus all accrued interest and all other amounts that may be owing thereunder are immediately due and payable.
>
> (c)    Failure to cure every default within thirty days of the mailing of this notice, or if personally served, within thirty days of the date of personal service thereof, may lead to recordation, transmittal and publication of a Notice of Trustee's Sale, and the property . . . may be sold at public auction at a date no less than 120 days in the future.

CP at 314. The above is sufficient to indicate that Azure accelerated its loan on April 30,

2007. Therefore, the six-year statute of limitations had run when Washington Federal

brought its quiet title action under RCW 7.28.300 in October 2014.

Azure argues that summary judgment is inappropriate because Azure either never

accelerated or abandoned its acceleration. Azure relies on the following two statements

from the record to support its argument: "Azure chose to accept the actions, assurances

and other commitments of LHDD1 rather than initiate foreclosure"; and, "in each event

[of default] Azure elected to accept verbal assurances from LHDD1 as supporting a cure

or excuse of those events of default." CP at 329. These are the only "facts" Azure points

to on the summary judgment issue. However, these statements do not set forth the

21

No. 33176-8-III; 33630-1-III
*Washington Federal v. Azure Chelan, LLC*

"specific facts" required to survive summary judgment. *Seven Gables*, 106 Wn.2d at 13. It does not say what the "action, assurances, and other commitments" actually were. It is merely a summary or conclusion of fact that is not sufficient to withstand summary judgment. *Grimwood*, 110 Wn.2d at 359-360.

Accordingly, we agree with the trial court that Azure did not present at summary judgment evidence suggesting that a question of material fact existed concerning the time its statute of limitations began running. There was no error.

The order granting summary judgment is affirmed.[5]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____    _____
Siddoway, J.                        Pennell, J.

_____

[5] In light of this disposition, we need not address specifically the issues concerning the counterclaims raised by the second appeal since they necessarily fail under our analysis of the related issues.

22