# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ROBERT C. TERHUNE and TARA TERHUNE, husband and wife; and EQUITY GROUP NWEST LLC, a Delaware Limited Liability Company, | No. 51479-6-II |
| Appellant, | |
| v. | PUBLISHED OPINION |
| NORTH CASCADE TRUSTEE SERVICES, INC., a Washington corporation; | |
| Defendant, | |
| U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST, a National Association; CALIBER HOME LOANS, INC., a corporation; DOE DEFENDANTS 1-10, inclusive, | |
| Respondents. | |

MAXA, C.J. – Robert and Tara Terhune and their closely held company Equity Group NWest (collectively, the Terhunes) appeal the trial court's order granting summary judgment in favor of U.S. Bank Trust (U.S. Bank) and Caliber Home Loans (Caliber).

In 2008, the Terhunes defaulted on a loan secured by a deed of trust on their home and in early 2009 received notices that their obligations on their promissory note would be accelerated if they did not cure the default. Caliber issued a notice of trustee's sale for the home on U.S.

Bank's behalf in 2016, and the Terhunes filed a lawsuit to enjoin the foreclosure and to quiet title to their home. The Terhunes argued that the promissory note had been accelerated in 2009, which started the six-year statute of limitations. Therefore, they claimed that the statute of limitations period had expired before U.S. Bank's foreclosure action. The Terhunes also argued that U.S. Bank was not authorized to foreclose because there was no evidence that U.S. Bank was the holder of the note.

We hold that (1) the statute of limitations did not bar the foreclosure action because there was no clear and unequivocal acceleration of the promissory note; (2) the evidence established that U.S. Bank was the holder of the Terhunes' promissory note and the Terhunes failed to establish a genuine issue of fact on this question, and therefore U.S. Bank had authority to foreclose on the deed of trust; and (3) the trial court did not err in denying the Terhunes' motion for reconsideration.

Accordingly, we affirm the trial court's orders granting summary judgment in favor of U.S. Bank and Caliber and denying the Terhunes' motion for reconsideration.

FACTS

*Promissory Note*

On January 8, 2008, the Terhunes executed a promissory note for $1,499,999 in favor of Countrywide Bank (Countrywide). The note was secured by a deed of trust on the Terhunes' home in Lake Tapps. The note required the Terhunes to make payments of $8,124.99 on the first day of every month beginning on March 1, 2008. The maturity date of the note was February 1, 2038.

The note stated that the Terhunes would be in default if they failed to make a monthly payment on the due date. The note also included an acceleration clause, which stated,

> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.

Clerk's Papers (CP) at 96.

The deed of trust stated that the lender must give written notice before accelerating the note obligations and that the notice must specify that "failure to cure the default on or before the date specified in the notice may result in acceleration." CP at 109 (bolding omitted). The deed of trust further provided that if the default was not cured on or before the date specified in the notice, "Lender at its option may require immediate payment in full of all sums" secured by the deed of trust. CP at 109 (bolding omitted).

*Default and Notice of Intent to Accelerate*

The Terhunes made monthly payments on the mortgage from March 2008 through October 2008. On December 17, after the Terhunes failed to make the November and December payments, Countrywide sent them a Notice of Intent to Accelerate. The notice stated that the loan was in default and that the Terhunes had until January 16, 2009 to cure the default by paying the two missed payments plus late charges. The notice also stated that if the default was not cured, "the mortgage payments **will be accelerated** with the full amount remaining." CP at 158.

The Terhunes made the November payment, but did not make the December payment and failed to make the January 2009 payment. On January 16, 2009, Countrywide sent a second Notice of Intent to Accelerate. The notice stated that the loan was in default and that the Terhunes had until February 15 to cure the default by paying the two missed payments plus late charges. The notice again stated that if the default was not cured, "the mortgage payments **will be accelerated** with the full amount remaining." CP at 161.

The Terhunes made the December payment, but they did not make the January 2009 payment and failed to make the February payment.  On February 17, 2009, Countrywide sent a third Notice of Intent to Accelerate.  The notice stated that the loan was in default and that the Terhunes had until March 19 to cure the default by paying the two missed payments plus late charges.  The notice stated, "If the default is not cured on or before March 19, 2009, the mortgage payments **will be accelerated** with the full amount remaining."  CP at 164.

The Terhunes failed to make any further payments on the loan.  However, there is no evidence that Countrywide provided any formal notice to the Terhunes that the loan actually had been accelerated.

*2010 Foreclosure Action*

In November 2009, BAC Home Loans Servicing, LP (BAC) sent the Terhunes a notice stating that BAC was servicing their loan and that their account was seriously delinquent.  The notice stated that the past due amount was $86,382.  In March 2010, BAC sent the Terhunes a notice of default stating that the total amount in arrears was $158,188.86.

In August 2010, the trustee of the deed of trust sent the Terhunes a notice of foreclosure, which stated that their property would be sold in December if their default was not cured.  The notice stated that the amount in arrears was $216,503.61, and that the Terhunes had until November 22 to cure the default by paying all accrued charges that by that time were estimated to be $256,210.39.  The trustee also recorded a notice of trustee's sale for December 3, 2010, which showed that the amount in arrears was $216,611.75.

In November, the Terhunes filed a lawsuit against BAC and others seeking, among other relief, an injunction to prevent the trustee's sale and to quiet title to their home.  The Terhunes'

lawsuit eventually was dismissed.  But there is no evidence that the trustee continued to pursue foreclosure at that time.

*Transfers of Note/Deed of Trust*

In March 2015, LSF9 Master Participation Trust notified the Terhunes that it had purchased their loan.  The Trust's mailing address was listed as "c/o Caliber Home Loans, Inc."  CP at 551.  On June 4, Caliber notified the Terhunes that it was the new servicer of the loan.  In a June 5 letter, Caliber notified the Terhunes that the creditor on the loan was LSF9 Master Participation Trust and that their total debt was $2,292,209.26.  However, the letter stated, "We are not requesting that you pay the entire loan balance."  CP at 187.

In September 2015, Bank of America (as successor by merger to BAC) assigned its beneficial interest in the deed of trust to U.S. Bank, as trustee for LSF9 Master Participation Trust.  On October 7, a representative of Caliber signed a declaration referencing the Terhunes' loan and stating that "U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST is the beneficiary . . . and actual holder of the promissory note or other obligation secured by the deed of trust."  CP at 559.  Above the signature line the declaration stated, "U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust, by Caliber Home Loans, Inc., as its attorney in fact."  CP at 559.  The document was signed by a person who listed her title as "authorized signatory."  CP at 559.

*2016 Foreclosure Action and Lawsuit*

In December 2015, the trustee of the deed of trust sent the Terhunes a notice of default, which stated that U.S. Bank was the creditor on the loan, Caliber was the servicer of the loan, and the Terhunes owed $732,627.78 in overdue payments, late charges, and advances on the loan.

On October 11, 2016, the trustee recorded a notice of trustee's sale for February 17, 2017. The notice stated that the total amount in arrears was $669,729.11 and that the Terhunes had until February 6, 2017 to cure the default by paying that amount.

On February 7, the Terhunes filed a lawsuit against U.S. Bank as trustee for LSF9 Master Participation Trust and Caliber[1] to enjoin the trustee's sale and to quiet title in their property.[2] The Terhunes claimed that the notice of trustee's sale was invalid because the statute of limitations to enforce the promissory note and deed of trust had expired, and that the trustee did not have the authority to initiate a trustee's sale because U.S. Bank was not the holder of the note.

U.S. Bank and Caliber filed a joint summary judgment motion. They argued that the statute of limitations had not expired because the loan was never accelerated. In support of their summary judgment motion, U.S. Bank and Caliber submitted the declaration of Nathaniel Mansi, a Caliber employee. Mansi stated that Countrywide did not accelerate the Terhunes' loan, and that "[a]t no time has the Loan been accelerated." CP at 92. He also stated that Countrywide had endorsed the promissory note in blank and that U.S. Bank was the owner of and was in possession of the note. Mansi stated that he made his declaration based on personal knowledge and his review of Caliber's business records regarding the Terhune loan.

The trial court granted the summary judgment motion. The Terhunes filed a motion for reconsideration arguing that there was no evidence to support the trial court's ruling. The trial court denied reconsideration.

---

[1] The lawsuit also named North Cascade Trustee Services, Inc., the trustee of the deed of trust, as a defendant. North Cascade later was dismissed from the lawsuit.

[2] The Terhunes also asserted a claim for violation of the Consumer Protection Act, chapter 19.86 RCW. The Terhunes have not appealed the trial court's dismissal of that claim.

The Terhunes appeal the trial court's orders granting U.S. Bank's and Caliber's summary judgment motion and denying the Terhunes' motion for reconsideration.

ANALYSIS

A.     LEGAL PRINCIPLES

1.     Standard of Review

We review a trial court's decision on a summary judgment motion de novo. *Merceri v. Bank of N.Y. Mellon*, 4 Wn. App. 2d 755, 759, 434 P.3d 84, *review denied* 192 Wn.2d 1008 (2018). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c). We view all facts and reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Merceri*, 4 Wn. App. 2d at 759.

The moving party bears the initial burden of proving that there is no genuine issue of material fact. *Zonnebloem v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017). Once a moving defendant shows that there is an absence of evidence to support the plaintiff's case, the burden shifts to the plaintiff to present specific facts that rebut the defendant's contentions and show a genuine issue of material fact. *Id.*

2.     Nonjudicial Foreclosure

The Deed of Trust Act (DTA), chapter 61.24 RCW, "provides an alternative to judicial foreclosure by allowing for the private sale of foreclosed property." *River Stone Holdings NW, LLC v. Lopez*, 199 Wn. App. 87, 92, 395 P.3d 1071 (2017). The underlying deed of trust creates three distinct roles: a lender, a borrower, and a trustee who holds the deed as security for the lender. *Id.* at 93. If the borrower defaults on the obligations owed to the lender, the trustee may foreclose on the property in a trustee's sale. *Id.*; RCW 61.24.030(3).

The DTA provides detailed procedures under RCW 61.24.030, .031, and .040 for foreclosing a deed of trust and conducting a trustee's sale. If a trustee fails to strictly comply with the DTA, the trustee lacks statutory authority to conduct a trustee's sale and any such sale is invalid. *River Stone Holdings*, 199 Wn. App. at 93.

B.     STATUTE OF LIMITATIONS FOR PROMISSORY NOTE

The Terhunes argue that the trial court erred by ruling that the statute of limitations did not bar U.S. Bank and Caliber from enforcing the promissory note. They argue that there were questions of material fact regarding whether their loan was accelerated in 2009, which would have resulted in the accrual of U.S. Bank's claim at that time. We disagree.

1.     Legal Principles

A promissory note and deed of trust, as written contracts, are subject to a six-year statute of limitations for such contracts. RCW 4.16.040(1); *Cedar W. Owners Ass'n v. Nationstar Mortg., LLC*, 7 Wn. App. 2d 473, 482, 434 P.3d 554, *review denied* 193 Wn.2d 1016 (2019). The six-year period begins "after the cause of action has accrued." RCW 4.16.005. For an installment promissory note, the cause of action "accrues for each monthly installment from the time it becomes due." *Cedar W. Owners Ass'n*. 7 Wn. App. 2d at 484. The final six-year period for taking action on an installment note does not begin to run until the note fully matures. *Merceri*, 4 Wn. App. 2d at 760.[3]

However, if a lender accelerates an installment note, "the entire remaining balance becomes due and the statute of limitations is triggered for all installments that had not previously

---

[3] Some courts have adopted a rule that the initiation of nonjudicial foreclosure proceedings tolls the statute of limitations, at least as long as the lender acts diligently in perfecting its remedies. *See Cedar W. Owners Ass'n*, 7 Wn. App. 2d at 488-89.

8

become due." *4518 S. 256th, LLC v. Karen L. Gibbon, PS*, 195 Wn. App. 423, 434-35, 382 P.3d 1 (2016).

For acceleration to occur, the lender must take some affirmative action that informs the borrower that the entire debt is immediately due. *Merceri*, 4 Wn. App. 2d at 760. " '[A]cceleration must be made in a clear and unequivocal manner which effectively apprises the maker that the holder has exercised his right to accelerate the payment date.' " *Id.* at 761 (quoting *Glassmaker v. Ricard*, 23 Wn. App. 35, 38, 593 P.2d 179 (1979)). A default on the loan alone will not accelerate a note, even if an installment note provides for automatic acceleration upon default. *Merceri*, 4 Wn. App. 2d at 760. And even the initiation of nonjudicial foreclosure proceedings does not automatically accelerate a note. *4518 S. 256th*, 195 Wn. App. at 436-445.

If the statute of limitations has expired on a promissory note secured by a deed of trust on real property, the owner is entitled to quiet title on the property. *Cedar W. Owners Ass'n*, 7 Wn. App. 2d at 482. Under RCW 7.28.300, "[t]he record owner of real estate may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations."

Here, the Terhunes defaulted on their promissory note in February 2009, but the foreclosure proceedings at issue here were not initiated until October 2016. Therefore, if Countrywide accelerated the loan in 2009, the statute of limitations period may have run on enforcement of the note before the 2016 foreclosure action.[4] Accordingly, we must determine whether the Terhunes presented any evidence to establish an issue of fact regarding whether Countrywide accelerated the note.

---

[4] U.S. Bank and Caliber argue that even if the promissory had been accelerated, the statute of limitations was tolled when the first foreclosure action was started. Because we hold that the note was not accelerated, we do not address this issue.

2.    Analysis

The Terhunes argue that Countrywide accelerated their obligations on the promissory note on February 17, 2009 when it sent the Terhunes the Notice of Intent to Accelerate. The notice stated that if the Terhunes did not cure the default before March 19, 2009, the mortgage payments "**will be accelerated**." CP at 164. The Terhunes claim that Countrywide was conditionally electing to exercise its right to accelerate the payments, and that the Terhunes' failure to cure the default automatically triggered the acceleration of the loan. They assert that this language is sufficient to at least create a question of fact regarding whether acceleration occurred.

However, the evidence does not support the conclusion that Countrywide took an affirmative action in 2009 that clearly and unequivocally informed the Terhunes that the note had been accelerated. First, as the title of the document indicated, the Notice of Intent to Accelerate was a statement only of an *intent* to accelerate at some time in the future if the Terhunes did not cure. The notice stated that the note "will" be accelerated, CP at 164, not that the note *was* accelerated. The argument that the failure to cure automatically triggered acceleration is inconsistent with the rule that the lender must take some affirmative action to accelerate a note. *Merceri*, 4 Wn. App. 2d at 760.

Second, there is no evidence that Countrywide ever gave the Terhunes formal notice that the note had been accelerated. The argument that such notice is not required is inconsistent with the rule that acceleration must be invoked clearly and unequivocally. *Id.*

Third, in multiple subsequent statements and notices, BAC and Caliber made it clear that that they were seeking to recover past due installment payments, not the full balance of the loan. BAC's first notice to the Terhunes in November 2009, eight months after the Terhunes claim

10

acceleration occurred, stated that the past due amount was $86,382. BAC did not state that the full amount of the loan was due. The 2010 and 2015 notices of default both stated that the amount in arrears was the amount of the unpaid installments, not the full amount of the loan. All the notices in the 2010 and 2016 foreclosure were based on the past due installment payments rather than the full amount of the loan, and stated that payment of the past due amounts could stop the foreclosure.

The Terhunes argue that certain notices from loan servicers stated the entire balance of the loan. They reference a July 6, 2011 letter from BAC stating that the Terhunes owed $1,830,002 on the loan without mentioning an option to bring the account current by making missed payments. But stating the outstanding balance on the loan does not mean that the full balance is immediately due.

Fourth, U.S. Bank and Caliber submitted the declaration of Mansi, who stated based on his review of the records for the Terhunes' loan that Countrywide did not accelerate the loan and that the loan had never been accelerated.

Two cases from other divisions of our court have rejected arguments similar to the Terhunes' argument here. In *Merceri*, Division One addressed a bank's notice of intent to accelerate containing language identical to Countrywide's "will be accelerated" notice. 4 Wn. App. 2d at 760-62. The court held that this notice did not accelerate the loan. *Id.* at 760, 763. The court acknowledged that the bank warned that the entire debt would be accelerated if the borrower failed to cure her default. *Id.* at 761. But the court relied on evidence similar to the evidence presented here in finding no acceleration:

> Thereafter, the Bank did not take an affirmative action in a clear and unequivocal manner indicating that the payments on the loan had been accelerated. The Bank never declared that the entire debt was due.
> . . .

11

> In addition, mortgage statements sent to Merceri after the February 2010 notice show the amount due as merely the sum of unpaid past due installments, not the full principal.

*Id.* The court also noted that the lender repeatedly informed the borrower that the amount due was the missed monthly payments rather than the entire loan amount and never sent a notice of default stating that the full balance was due. *Id.* at 763.

In *U.S. Bank National Association v. Ukpoma*, Division Three held that acceleration did not occur even though the lender gave notice that it had elected to accelerate. 8 Wn. App. 2d 254, 259, 438 P.3d 141 (2019). In that case, a notice stated that the bank had elected to accelerate the loan, but the notice then contradicted itself by stating that the borrower could reinstate the loan by paying the delinquent payments. *Id.* at 256-57. The court stated that this contradiction made the notice unclear rather than a clear and unequivocal acceleration. *Id.* at 259. In addition, the court emphasized that all subsequent notices showed that the note had not been accelerated. *Id.*

In contrast, in *Washington Federal, National Association v. Azure Chelan LLC*, Division Three held that acceleration had occurred under the facts of that case. 195 Wn. App. 644, 662-64, 382 P.3d 20 (2016). There, a notice of default explicitly stated that the total amount due was the accelerated balance due under the promissory note. *Id.* at 663. The notice also stated that as a consequence of the default, the entire principal amount of the promissory note plus interest was "immediately due and payable." *Id.* at 663-64. The court held that this statement in the notice of default was sufficient to prove that the lender had accelerated the loan. *Id.* at 664.

Our case is similar to *Merceri*, not to *Washington Federal*. Here, the notice of intent to accelerate used the same conditional language as in *Merceri*. And, unlike *Washington Federal*, Countrywide and its successors never indicated in a subsequent statement or notice that it was

seeking the entire balance of the mortgage. In addition, the deed of trust explicitly required the lender to give advance notice before accelerating the mortgage payments. A notice of *intent* to accelerate is such an advance notice, not an affirmative election. And a conditional statement that failure to cure the default *will* accelerate the loan in the future does not unequivocally alert the borrower that the note holder *has* already elected to accelerate the loan.

We conclude that the Terhunes failed to establish a question of material fact whether Countrywide or its successors took an affirmative action that clearly and equivocally accelerated their promissory note and therefore that the statute of limitations had expired on U.S. Bank's foreclosure action. Accordingly, we hold that the trial court did not err in granting U.S. Bank's and Caliber's summary judgment motion with regard to the Terhunes' quiet title action.

C.      HOLDER OF THE PROMISSORY NOTE

The Terhunes argue that the trial court erred by ruling that U.S. Bank had authority to enforce the deed of trust. They argue that summary judgment is inappropriate because there was a question of material fact whether U.S. Bank is the holder of the promissory note. We disagree.

1.      Legal Principles

Chapter 62A RCW provides for the enforcement of negotiable instruments like promissory notes. Under RCW 62A.3-301, the holder of an instrument is entitled to enforce an instrument. *See Brown v. Dep't. of Commerce*, 184 Wn.2d 509, 524-25, 359 P.3d 771 (2015). A "holder" includes a person in possession of a negotiable instrument that is payable to bearer. RCW 62A.1-201(b)(21)(A). And an instrument is payable to bearer when a holder makes a blank endorsement – an endorsement that does not specify the person to whom the instrument is payable. RCW 62A.3-205(b).

Here, Countrywide endorsed the Terhunes' promissory note in blank. Therefore, the person in possession of the note was the holder under RCW 62A.1-201(b)(21)(A).

To initiate a trustee's sale under RCW 61.24.030(7)(a), the trustee must have proof that the beneficiary of a promissory note is the actual holder of the note with the authority to appoint a trustee to commence a nonjudicial foreclosure. *Blair v. Nw. Tr. Servs., Inc.*, 193 Wn. App. 18, 31, 372 P.3d 127 (2016). However, "[a] declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the holder of any promissory note or other obligation secured by the deed of trust shall be sufficient proof." RCW 61.24.030(7)(a); *see Blair*, 193 Wn. App. at 34.

2. Analysis

Here, the record contains two pieces of evidence showing that U.S. Bank is the holder of the Terhunes' note. The beneficiary declaration signed by Caliber as attorney in fact for U.S. Bank states that U.S. Bank was the actual holder of the Terhunes' note. And Mansi's declaration states that based on his review of the business records regarding the Terhunes' note, U.S. Bank had possession of the note.

This evidence satisfied U.S. Bank's initial burden of proving that there was no genuine issue of material fact. The burden then shifted to the Terhunes to present specific facts that demonstrated a genuine issue of material fact. *Zonnebloem*, 200 Wn. App. at 183. However, the Terhunes presented no evidence or even an inference from the evidence that U.S. Bank was not the holder of their note. Instead, they only challenge the adequacy of U.S. Bank's evidence.

First, the Terhunes argue that the beneficiary declaration was insufficient because it was not signed by U.S. Bank. Instead, it was signed by Caliber as the attorney in fact for U.S. Bank.

The Terhunes emphasize that RCW 61.24.030(7) requires the *beneficiary* of the note to sign the declaration, and not the beneficiary's agent.

However, the Supreme Court in *Bain v. Metropolitan Mortgage Group, Inc.* stated, "[N]othing in this opinion should be construed to suggest an agent cannot represent the holder of a note. Washington law, and the deed of trust act itself, approves of the use of agents." 175 Wn.2d 83, 106, 285 P.3d 34 (2012). An agent includes an attorney in fact. *See* RCW 11.125.020(1); *In re Estates of Palmer*, 145 Wn. App. 249, 263, 187 P.3d 758 (2008). As a result, we conclude that a beneficiary's attorney in fact can sign a beneficiary declaration on behalf of the beneficiary.

The Terhunes note that the record does not contain an appointment of Caliber as U.S. Bank's attorney in fact. But the record contains evidence that Caliber was U.S. Banks's agent. And the Terhunes produced no evidence that Caliber was not U.S. Bank's agent and therefore was not authorized to sign the beneficiary affidavit.

Second, the Terhunes argue that the declaration was insufficient because the language is ambiguous as to whether U.S. Bank is the holder of the promissory note. They focus on the statement that U.S. Bank was the "actual holder of the promissory note *or other obligation secured by the deed of trust*." CP at 559 (emphasis added). They claim that this case is controlled by *Lyons v. U.S. Bank National Association*, 181 Wn.2d 775, 336 P.3d 1142 (2014).

In *Lyons*, the Supreme Court held that the trustee could not rely on a declaration by the note holder because the language of the declaration was ambiguous. *Id.* at 791. The declaration stated that a bank was " 'the actual holder of the promissory note or other obligation evidencing the above-referenced loan *or has requisite authority under RCW 62A.3-301 to enforce said obligation*.' " *Id.* at 780 (emphasis added) (quoting record). The court stated that the declaration

15

was ambiguous regarding whether the bank was the holder of the note or had some other authority to enforce the note. *Id.* at 790-91. Therefore, the court held that the declaration was not sufficient to establish the bank's holder status. *Id.* at 791; *see also Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 826, 355 P.3d 1100 (2015) (holding that the same language was ambiguous and insufficient).

But the beneficiary declaration here did not include the language that the court in *Lyons* found ambiguous: " '*or has requisite authority under RCW 62A.3-301 to enforce said obligation.*' " 181 Wn.2d at 780 (emphasis added) (quoting record). Instead, the declaration stated that U.S. Bank is the holder of the note or other obligation. The Terhunes argue that the declaration was ambiguous just as in *Lyons* because the declaration stated that U.S. Bank was the holder of the note "*or* other obligation." CP at 559 (emphasis added). But the declaration here tracked the statutory language. RCW 61.24.030(7)(a) provides that a beneficiary declaration stating that "the beneficiary is the holder of any promissory note *or other obligation* secured by the deed of trust" is sufficient proof that the beneficiary is the holder of the note. (Emphasis added.) Therefore, we conclude that the declaration language was not ambiguous and satisfied the statutory requirement.

Third, the Terhunes argue that the Mansi declaration is insufficient to prove that U.S. Bank had possession of the note because he was an employee of Caliber, not U.S. Bank, and lacked personal knowledge as to whether U.S. Bank actually had possession of the note. However, Caliber was the servicer of the Terhunes' loan and Mansi reviewed Caliber's business records regarding the loan. Therefore, he did have personal knowledge based on that review regarding the promissory note. And there is no requirement that only the holder can present

16

evidence regarding possession of the note. The Terhunes' arguments may go to the weight of Mansi's testimony, but they presented no evidence to refute it.

We hold that the Terhunes failed to establish a question of material fact as to whether U.S. Bank was the holder of the Terhunes' promissory note and therefore had authority to foreclose on the note. Accordingly, we hold that the trial court did not err in granting U.S. Bank's and Caliber's summary judgment motion with regard to the Terhunes' claims.

D.     MOTION FOR RECONSIDERATION

The Terhunes argue that the trial court erred in denying their reconsideration motion. We disagree.

CR 59(a) provides nine grounds under which a party can move for reconsideration of a trial court's decision. *E.g.*, *Christian v. Tohmeh*, 191 Wn. App. 709, 728, 366 P.3d 16 (2015). Under CR 59(a)(7), a party may argue that there is no evidence or reasonable inference from the evidence to support the trial court's ruling. We review a trial court's decision on a reconsideration motion for an abuse of discretion. *Fed. Home Loan Bank of Seattle v. RBS Sec., Inc.*, 3 Wn. App. 2d 642, 648, 418 P.3d 168 (2018). A trial court abuses its discretion if its decision is manifestly unreasonable, based on untenable grounds, or unsupported by the record. *Id.*

The Terhunes argued on reconsideration that at a minimum U.S. Bank could not recover installment payments not made before October 2010 based on the statute of limitations. On appeal, the Terhunes argue that the trial court erred in rejecting this argument.

The Terhunes may be correct that the statute of limitations had run on their earlier missed installment payments because the claim on those payments accrued when they were missed. But U.S. Bank was not seeking to "recover" any payments; it was seeking a nonjudicial foreclosure of

17

the Terhunes' property. A trustee's sale is allowed if "a" default has occurred on the secured obligation, RCW 61.24.030(3), and therefore U.S. Bank was entitled to foreclose based on the later missed payments. And the Terhunes generally cannot be held personally liable in a nonjudicial foreclosure action. RCW 61.24.100(1). Therefore, whether some of the earlier payments were subject to the statute of limitations is immaterial.[5]

The Terhunes also argued on reconsideration that there was no evidence to support the trial court's summary judgment ruling that U.S. Bank was the holder of the note. However, as discussed above, the evidence showed that U.S. Bank was the holder.

Accordingly, we hold that the trial court did not err in denying the Terhunes' motion for reconsideration.

E.      ATTORNEY FEES ON APPEAL

U.S. Bank and Caliber request attorney fees on appeal. We may grant an award of reasonable attorney fees under RAP 18.1(a) if allowed under the applicable law. The prevailing party in a breach of contract action can recover reasonable attorney fees if the contract specifically provides for such an award. *4518 S. 256th*, 195 Wn. App. at 446. U.S. Bank and Caliber apparently rely on the attorney fee provision in the promissory note.

The only provision in the promissory note regarding attorney fees is paragraph 7(E) which states, "If the Note Holder has required [the borrower] to pay immediately in full as described above, the Note Holder will have the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note. . . . Those expenses include, for example,

---

[5] The Terhunes argue that whether the statute of limitations has expired on earlier missed payments may be relevant if their house sells for more than the outstanding balance of their loan. We do not address whether the statute of limitations would apply to earlier missed payments if U.S. Bank attempts directly or indirectly to recover the amount of those payments in the foreclosure proceeding. Instead, that issue can be addressed in the foreclosure proceeding.

reasonable attorneys' fees." CP at 96. This provision allows for the recovery of attorney fees only if the note obligations have been accelerated. Because we hold above that the note was not accelerated, U.S. Bank is not entitled to recover attorney fees under the note.

The Terhunes also request attorney fees and costs on appeal under the note. Because we affirm the trial court's orders, the Terhunes are not entitled to recover attorney fees and costs because they are not the substantially prevailing party.

CONCLUSION

We affirm the trial court's orders granting U.S. Bank's and Caliber's summary judgment motion and denying the Terhunes' motion for reconsideration.

_____
MAXA, C.J.

We concur:

_____
LEE, J.

_____
CRUSER, J.