# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| FEDERAL HOME LOAN BANK OF SEATTLE, a bank created by federal law, | ) ) ) ) | No. 76326-1-I |
|  | ) | DIVISION ONE |
| Appellant, | ) ) |  |
|  | ) |  |
| v. | ) ) |  |
| RBS SECURITIES, INC., f/k/a GREENWICH CAPITAL MARKETS, INC., a Delaware corporation; GREENWICH CAPITAL ACCEPTANCE, INC., a Delaware corporation; and RBS HOLDINGS USA, INC., f/k/a GREENWICH CAPITAL HOLDINGS, INC., a Delaware corporation, | ) ) ) ) ) ) ) ) ) ) ) ) | PUBLISHED<br><br>FILED: May 21, 2018 |
| Respondents. | ) ) |  |

Cox, J. — Under the Washington State Securities Act (WSSA), an investor who sues for violation of this act must prove reasonable reliance on statements or omissions by a defendant.[1] Here, Federal Home Loan Bank of

---

[1] Hine v. Data Line Sys., Inc., 114 Wn.2d 127, 134, 787 P.2d 8 (1990); Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc., 1 Wn. App. 2d 551, 406 P.3d 686 (2017), review granted, No. 95436-4 (Wash. May 3, 2018) (consolidated with No. 75779-2-I); Fed. Home Loan Bank of Seattle v. Credit Suisse Securities (USA) LLC et al., No. 75779-2-I (Wash. Ct. App. Dec. 11, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/757792.PDF, review granted, No. 95420-8 (Wash. May 3, 2018) (consolidated with No. 75913-2-I).

Seattle (FHLBS) sued, as an investor, defendants Royal Bank of Scotland Securities Inc., Greenwich Capital Markets, Inc., Greenwich Capital Acceptance, Inc., and RBS holdings USA, Inc., formerly known as Greenwich Capital Holdings, Inc. (collectively, RBS) for violating the WSSA. There is no genuine issue of material fact whether FHLBS relied on the prospectus supplement for the security that is the basis of its claim. It could not have relied on the prospectus supplement, which was issued after the purchase of the security. And FHLBS's new arguments, first raised in response to RBS's motion for reconsideration, were not properly before the trial court. The trial court did not abuse its discretion in granting reconsideration and dismissing this action. We affirm.

This is the third of a number of consolidated actions under the WSSA by FHLBS to reach this court. As in the two prior cases, this case arises out of FHLBS's purchase of a residential mortgage backed security (RMBS).[2] In our prior decisions, we explained the process of securitization and sale of the pool of residential loans that comprise these types of securities.[3] The same principles apply here. In essence, the stream of income generated by the individual loans in the pool funds the return on investment made by the purchaser of the security. Accordingly, much of the information about the characteristics of the loans in the pool may be material to an investor's decision whether to purchase the security.

---

[2] Barclays Capital, Inc., 1 Wn. App. 2d at 554; Credit Suisse Securities (USA) LLC et al., No. 75779-2-I, slip op. at 2-3.

[3] Barclays Capital, Inc., 1 Wn. App. 2d at 554; Credit Suisse Securities (USA) LLC et al., No. 75779-2-I, slip op. at 2-3.

On June 29, 2006, FHLBS purchased the security at issue in this case for $200,000,000.[4] As it turns out, the prospectus supplement for this security was issued one day after this purchase.[5]

On December 23, 2009, FHLBS commenced this action based solely on the WSSA. In its amended complaint, it set forth the allegations supporting its claim for rescission and other relief. Essentially, FHLBS claimed that RBS had made "Untrue or Misleading Statements" about the characteristics of the loans in the security pool. Specifically, these statements concerned the loan to value (LTV) ratios of the loans, the originator's underwriting practices, and the appraisals of the properties securing the loans.

In August 2015, RBS moved for summary dismissal of this action. The trial court denied this motion on the basis that whether FHLBS received the HVMLT 2006-5 prospectus supplement for the security certificate before purchasing the certificate was a material issue of fact.

RBS then moved for reconsideration of the denial of summary judgment. It did so on the basis that the prospectus supplement was not issued until one day after the sale of the security.[6] The court granted this motion, dismissing this action.

This appeal followed.

---

[4] Clerk's Papers at 7348.

[5] Id. at 7348, 7722, 7724.

[6] Id. at 7709, 7722, 7724.

3

## REASONABLE RELIANCE IN MARKETING A SECURITY

FHLBS argues in its briefing on appeal that a plaintiff in an action under RCW 21.20.010(2) of the WSSA need not prove that it relied on an untrue or misleading statement of material fact that a defendant made in connection with the sale of a security. We hold that this argument is without merit.

This issue is controlled by two of our recent decisions: Federal Home Loan Bank of Seattle v. Barclays Capital, Inc.[7] and Federal Home Loan Bank of Seattle v. Credit Suisse Securities (USA) LLC.[8] In Barclays Capital, Inc., FHLBS made the same arguments that it makes here. We rejected all of them and do so again.

We held that the legislative intent of the WSSA is evident in the words of the statute, its substantial similarity to its federal counterpart, and an unbroken line of controlling cases holding that reliance is an essential element of this statute. Based on this analysis, we concluded in that case that there were no genuine issues of material fact whether FHLBS's reliance on the prospectus supplement in that case was reasonable. It was not reasonable, and summary dismissal of its claim was proper.

---

[7] 1 Wn. App. 2d 551, 556, 406 P.3d 686 (2017), review granted, No. 95436-4 (Wash. May 3, 2018) (consolidated with No. 75779-2-I).

[8] No. 75779-2-I (Wash. Ct. App. Dec. 11, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/757792.PDF, review granted, No. 95420-8 (Wash. May 3, 2018) (consolidated with No. 75913-2-I).

In <u>Credit Suisse Securities (USA) LLC</u>, we applied this legal principle of reasonable reliance to hold that FHLBS failed to show that necessary element of its claim. That was because it purchased the security in question before the issuance of the prospectus supplement on which it allegedly relied. Because it was impossible to rely on something that was not issued until after the purchase of the security, there was no genuine issue of material fact on reliance on the supplement. Summary dismissal of its claim was accordingly also proper.

Here, it is undisputed that FHLBS purchased the security at issue before the related prospectus supplement was issued. Specifically, FHLBS alleged in its amended complaint that it purchased the security on June 29, 2006. But this record shows that the prospectus supplement for that security was not issued until the day following the purchase. Thus, FHLBS could not have relied on that prospectus supplement to purchase the security in this action.

We adhere to the principles we articulated in those earlier cases. FHLBS fails to persuasively argue why we should reach any different conclusions here. Reasonable reliance is an essential element of this state securities act claim that FHLBS must prove.

## RECONSIDERATION MOTION

While FHLBS argues that reliance is not an essential element of the state securities act claim, it now also argues that it relied on "offering documents" that it received "before settlement and before the final prospectus supplement was received." It further argues that "market practice and the course of dealing between the parties" about what was to be in the prospectus supplement

supports its position. We hold that FHLBS fails to establish that the trial court abused its discretion in rejecting these new arguments, granting reconsideration, and dismissing this action.

We will affirm a summary judgment order "where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. A 'material fact' is one on which the outcome of the litigation depends. We review de novo orders of summary judgment."[9]

But we review for abuse of discretion a trial court decision on a reconsideration motion.[10] The trial court's decision is manifestly unreasonable if it exceeds the range of acceptable choices, in light of the facts and applicable law.[11] "[I]t is based on untenable grounds if the factual findings are unsupported by the record."[12] And "it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard."[13]

We begin our analysis of the trial court's decision on RBS's motion for reconsideration by examining that motion's context. At that time in the litigation of the consolidated cases, two defendants were similarly situated due to special circumstances: Credit Suisse Securities (USA) LLC and RBS. The special

---

[9] Barclays Capital, Inc., 1 Wn. App. 2d at 556.

[10] In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997).

[11] Id.

[12] Id. at 47.

[13] Id.

circumstances were that, in each case, the respective prospectus supplement was issued after consummation of FHLBS's purchase of the related security. These facts appear to have been unknown to the parties throughout the six years of litigating the case below and only discovered shortly before trial.

At the hearing on RBS's motion for reconsideration, counsel for FHLBS candidly explained these circumstances:

> Your Honor, I think it's worth pausing for a moment to understand why these issues have come out now, because Credit Suisse in particular suggests that the plaintiff has sloughed off the issue, that at the last minute it's helping itself to amend the complaint to include much broader evidence of usage and practice. But in fact, the reason why these arise now is a good deal more complicated than that.

> As your Honor is aware, all prospective supplements had a date. Throughout the course of this litigation, Seattle Bank and its counsel, certainly including myself, assumed that the defendants filed the prospective [sic] supplement with the SEC on the date when it was dated which proved to be correct in most cases. Credit Suisse must have made the assumption that it filed its prospective supplements with the SEC on the date it was dated, because it wasn't until its reply brief in support of its individual motion for summary judgment that Credit Suisse first thought to check the filing records of the SEC and discovered, apparently for the first time, that it actually did not file its prospective supplements for two of the offerings on time.

> Now, RBS came to that realization even more belatedly because they didn't check that out until they read the Court's ruling granting summary judgment to Credit Suisse on the grounds that their prospective supplements were filed after the defective dates.

> So it is true that this issue arises late in the case, but it arises late for one reason which applies to all three parties that are interested in it, which is that all counsel assumed that the defendants filed their prospective supplements on the date they were dated; and with respect to the vast majority of them, that turned out to be true.

> . . . .

Your Honor, it's for the same reason that questions about usage of the trade and course of dealing between the parties are coming up now. That evidence is irrelevant when it's clear that a prospective supplement was filed because the prospectus was – filed on time because the prospective supplement is there, the Seattle Bank's practice was to check and confirm that the statements it relied on were reconfirmed in a prospective supplement.

***The need for evidence of course of dealing and usage of trade arises only from the fact that these two defendants were late in filing these three prospective supplements. So it becomes necessary not just to look at the prospective supplement that was filed on time, but to look at the context in which the prospective supplement was filed late*** to see what were the reasonable expectations of the parties about the contents of that prospective supplement.

So that is again why this issue of reliance on course of dealing and usage of trade comes up only now, because it's only now that all three of us discovered that our assumption was incorrect, that the defendants had filed their prospective supplements on time.[14]

Following the prior denial of summary judgment to RBS, the parties first discovered that a basic premise under which all had operated for over six years was incorrect: that the prospectus supplement for the security was available on or before the June 29, 2006 date of purchase of the security. It is undisputed that the prospectus supplement only became available on June 30, the day after the purchase.

The question, thus, was what impact this newly discovered information had on the case.

---

[14] Report of Proceedings Vol. V (Jul. 25, 2016) at 637-40 (emphasis added).

RBS moved for reconsideration, arguing that this newly discovered information showed that FHLBS could not have relied on the prospectus supplement to purchase the security. That was because it was issued after the purchase, not before, as all had assumed.

In response, FHLBS made several arguments. FHLBS responded that it had also relied on statements by RBS in what it calls preliminary "offering documents" in its briefing on appeal. It argued that it had also relied on statements it expected to see in the final prospectus supplement based on market practice and course of dealing between the parties.

The trial court first ruled that "there is no genuine issue of material fact and [FHLBS] will be unable to prove actual reliance on the statements in the prospectus supplement for [this security]."[15] In its briefing on appeal, FHLBS does not challenge this part of the decision that it cannot prove actual reliance on the prospectus supplement. This record plainly shows that the trial court correctly determined that FHLBS could not have relied on a document that was not issued until after it purchased the security. We hold that any argument to the contrary is wholly without merit.

The trial court further ruled that:

> FHLBS argues the issue of reliance also turns on the experience of its traders and certain preliminary materials provided to FHLBS by RBS. However, FHLBS's [amended] complaint identifies alleged misstatements only in the prospectus supplements. At every stage of this litigation, FHLBS has argued that it relied upon the prospectus supplements. . . . To allow FHLBS to pursue what is a new theory would be effectively allowing it to amend its complaint,

---

[15] Clerk's Papers at 8185.

six years into the litigation and on the eve of trial. That clearly would prejudice RBS (and other defendants).[16]

The question is whether the trial court abused its discretion in this portion of its ruling. We conclude that it did not.

Opposing reconsideration "does not permit a plaintiff to propose new theories of the case that could have been raised before entry of an adverse decision."[17] "[A] complaint generally cannot be amended through arguments in a response brief to a motion for summary judgment" or asserted on reconsideration.[18] Accordingly, a party cannot raise new legal theories at that juncture without properly amending its complaint under CR 15(a).[19] Our review of the trial court's decision is for manifest abuse of discretion.[20]

*Amended Complaint*

The trial court read FHLBS's amended complaint to focus on the prospectus supplement for this security as the primary basis for its claim. So do we.

The amended complaint is some 120 pages long. But the material portions of that pleading specify that FHLBS's First Claim for Relief is based on

---

[16] Id.

[17] Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005).

[18] Camp Fin., LLC v. Brazington, 133 Wn. App. 156, 162, 135 P.3d 946 (2006).

[19] Id.

[20] Littlefield, 133 Wn.2d at 46-47.

"Untrue or Misleading Statements" regarding loan to value ratios and appraisals of the properties securing the loans in the security pool. Without exception, the pleadings identify various pages of the prospectus supplement as the sources of the statements. For example, with respect to loan to value ratios, FHLBS alleged:

> In the prospectus supplement and other documents they sent to Seattle Bank, Greenwich Capital Markets and Greenwich Capital Acceptance made the following statements about the LTVs of the mortgage loans in group 2.
> a. The original LTVs of the mortgage loans in group 2 ranged from 26.55% to 95%, with a weighted average of 74.96%. HVMLT 2006-5 *Pros. Sup. S-6.*
> b. "Approximately . . . 7.06% of the . . . group 2 mortgage loans . . . are mortgage loans having original loan-to-value ratios greater than 60% . . . ." HVMLT 2006-5 *Pros. Sup. S-18.*
> c. "As of the cut-off date, approximately 7.06% of the . . . group 2 mortgage loans . . . have original loan-to-value ratios in excess of 80% ("80+LTV loans"). HVMLT 2006-5 *Pros. Sup. S-27.*
> d. In "The Mortgage Loan Groups" section, Greenwich Capital Markets and Greenwich Capital Acceptance presented tables of statistics about the mortgage loans in the collateral pool. HVMLT 2006-5 *Pros. Sup. S-31 to S-61.*[21]

This pattern of specifying the prospectus supplement, without identifying any "other documents," as the source of its claim is repeated throughout the balance of the amended complaint. Notably, nothing in this amended complaint refers to any of the new theories first raised in FHLBS's response to RBS's motion for reconsideration. We conclude that the trial court fairly read the amended complaint as one based primarily on the prospectus supplement. To the extent FHLBS relied on "other documents" in its amended complaint, nothing

---

[21] Clerk's Papers at 13 (emphasis added).

there shows how these documents relate to FHLBS's newly raised theories in response to RBS's motion for reconsideration.

FHLBS points to language in the amended complaint stating that it also relied on other unspecified documents that were available prior to its purchase of the security. But this reliance on the broad concept of notice pleading does nothing to fill the gap created by its failure to also allege that these documents related to the new theories raised shortly before trial.

We say this because when considered in contrast to the specification of pages in the prospectus supplement that support the WSSA claim, any reasonable reading of the amended complaint supports the conclusion that the primary focus of the claim was the prospectus supplement, not "other documents."

### Arguments During the Litigation

Even if we were to accept the argument that notice pleading saves the day concerning the "other documents" on which FHLBS now relies, we remain unpersuaded that the trial court abused its discretion. That is because the trial court concluded that this new theory was inconsistent with the arguments FHLBS had made during the six-year pendency of this litigation.

For example, nowhere in FHLBS's response to RBS's motion for summary judgment do we find anything that suggests that it departed from its primary reliance on the prospectus supplement for its claims. That would have been the time to clarify that it was alleging reliance on "other documents" in order to ensure a trial. But FHLBS failed to do so.

Most importantly, the trial judge who sat on this case for six years was in the best position to assess what arguments the parties were making. And that judge determined that FHLBS primarily relied on the prospectus supplement for its claims, not "other documents." We will not invade the province of the trial judge in making this discretionary determination.

We further note that counsel for FHLBS candidly and correctly explained at oral argument on RBS's motion for reconsideration why the shift in focus to "other documents" and the new theories was required. That is because no one realized before that time that FHLBS had purchased the security before it saw the prospectus supplement.

We do not fault counsel or any party for the failure to discover this material evidence until shortly before trial. But the fact remains that the newly discovered evidence required the trial court to assess its effect on the disposition of this case. That assessment was based on review of the pleadings and consideration of the various arguments by the parties over the course of six years. We simply cannot conclude that the trial court abused its considerable discretion in making the assessment that it did.

### New Theories and Prejudice

This brings us to the final basis of the trial court's decision. The court ruled that the new theories, first raised in the response to the motion for reconsideration, would be prejudicial to RBS. We agree.

In the proceedings below, FHLBS did not appear to contest the trial court's ruling that the theories raised in its response to the motion for reconsideration

13

were new. We read counsel's statement at the hearing on the motion to be a concession that they were new, explaining why he believed they were necessary to raise for the first time at that point in the litigation.

We turn then to the question of prejudice. Again, the trial court was in the best position to make this determination. The court correctly determined that these new theories, raised for the first time in the response to RBS's motion for reconsideration and without first amending the pleadings, would be prejudicial.

Remarkably, FHLBS argues that there would be no prejudice. But we cannot agree.

At the hearing on the motion for reconsideration, FHLBS explained that during discovery, it had provided RBS responses stating that it had relied on 340 "other documents" before it purchased the security. How FHLBS can now claim there would be no prejudice if the trial court had allowed it to advance its new theories, without reopening discovery and on the eve of trial, is simply beyond our understanding. The trial court properly exercised its discretion in concluding that it would be prejudicial to RBS to allow these new theories to proceed to trial. We affirm the orders designated in the notice of appeal.

_____Cox, J._____

WE CONCUR:

_____         _____

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2018 MAY 21 AM 9:29

14