[No. 56035-2-I.   Division One.   June 19, 2006.]

DONG WAN KIM ET AL., *Appellants*, v. JAY D. O'SULLIVAN ET AL., *Respondents.*

558

*Komron M. Allahyari* and *Jaime M. Olander*, for appellants.

*Steven A. Rockey* (of *Eklund Rockey Stratton, P.S.*), for respondents.

¶1 BECKER, J. — ■ A client may not assign a claim of attorney malpractice to his adversary in the litigation out of which the alleged malpractice arose. *Kommavongsa v. Haskell*, 149 Wn.2d 288, 67 P.3d 1068 (2003). Appellant Kim has attempted to avoid this rule by agreeing to prosecute the claim in his own name for the benefit of his original adversary and subject to that adversary's right to control the litigation. Because the rationale of *Kommavongsa* renders such an agreement invalid, and because appellant Kim has not offered proof of damages that would support his claim in any event, the trial court properly granted summary judgment to malpractice defendant Jay O'Sullivan.

■ ¶2 After a grant of summary judgment, this court conducts the same inquiry as the trial court. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. A material fact is one upon which the outcome of the litigation depends. The appellate court views all facts and reasonable inferences in the light most favorable to the nonmoving party, applying de novo review to issues of law. *Lavigne v. Chase, Haskell, Hayes & Kalamon, P.S.*, 112 Wn. App. 677, 682, 50 P.3d 306 (2002).

¶3 Viewed in the light most favorable to Kim, this case arose out of a 1997 bar scuffle that injured Thomas Reina. Reina and his wife, represented by attorney Komron Allahyari of the Washington Law Group, sued the bar owners, Kim and his wife. Kim owned $1 million insurance

policies from two insurers, Odyssey Re Limited and Columbia Casualty Company. Odyssey insured Kim against general liability, and Columbia insured him against liability from serving liquor. Kim asked both insurers to provide defense counsel. Both insurers disputed coverage in a single declaratory judgment action, to which Kim, Reina, and the insurers were all parties. Before the coverage action concluded, Columbia and Odyssey each agreed to provide Kim defense counsel subject to a reservation of the insurers' rights to dispute coverage.

¶4 Columbia assigned attorney Jay O'Sullivan to defend Kim. Kim also retained his own attorney, Karl Park, who represented Kim in both the coverage dispute and Reina's tort suit.

¶5 According to Kim, O'Sullivan's representation was deficient in several ways throughout the case. He failed to inform Kim about the nature of the "reservation of rights" defense. He failed to obtain Kim's informed consent to his alleged conflicts of interest. (Allegedly, O'Sullivan was conflicted because he was being paid by Columbia but representing Kim.) He limited his efforts to defending the liquor liability claims, even though Reina also raised "premises liability" claims. He failed to adequately conduct discovery and as a result caused both Kim and Columbia to underestimate the strength of Reina's case.

¶6 The record reflects that these allegations are subject to considerable dispute, but for purposes of summary judgment we will assume Kim could prove deficient representation at trial. Kim's theory is that if O'Sullivan had accurately represented the strength of Reina's case, Columbia would have made more funds available for settlement, and Kim could have settled the claim for as little as $200,000 in December 2002 when Reina offered to accept that sum. Instead, Kim says, the offer expired by its terms in January 2003, after O'Sullivan convinced him not to settle.

¶7 After the $200,000 offer expired, Kim took matters into his own hands. Without consulting O'Sullivan, he

authorized Park to settle with Reina. Negotiations produced Kim's consent to a $3 million judgment in February 2003:

> [T]he Kims agree, consent, and stipulate to entry of judgment against them in the amount of $3 million ($3,000,000.00), subject to all other terms and conditions of this Settlement Agreement, and provided that the Reinas never enforce nor attempt to enforce the judgment against the Kims personally as hereinafter agreed.

In exchange for Reina's agreement not to enforce the judgment against Kim, Kim assigned to Reina any insurance proceeds he would receive from Odyssey and Columbia to cover his liability in the Reina lawsuit; his claims for bad faith against Odyssey and Columbia; and his claims for malpractice against the attorneys the insurers had provided (including O'Sullivan). Kim promised to cooperate fully with Reina as Reina prosecuted Kim's bad faith and malpractice claims. Reina agreed to hold Kim harmless from the expenses and risks of the litigation.

¶8 That same month, Reina (as Kim's assignee) released Kim's claims against Odyssey in exchange for $125,000. Reina and Kim filed an agreed judgment for $2,875,000. Shortly thereafter, Reina released Kim's claims against Columbia in exchange for $672,500. The insurers dismissed their declaratory judgment action.

¶9 On May 1, 2003, the Washington Supreme Court decided *Kommavongsa*. In *Kommavongsa*, an attorney representing the defendant in an accident case negligently allowed a default judgment to be entered. In settlement of the claim, the defendant assigned to the injured plaintiff his malpractice claim against the attorney. The court held that such assignments are against public policy. "In sum, we can see no advantage flowing to the legal system or the public that it serves from permitting assignments of malpractice claims to adversaries in the same litigation that gave rise to the alleged malpractice." *Kommavongsa*, 149 Wn.2d at 311.

¶10 Kim and Reina recognized that *Kommavongsa* rendered Kim's assignment of the malpractice claim void and

unenforceable. They responded by modifying the original agreement with an addendum signed in May 2004 by Kim, Reina, and Allahyari. In place of Kim's assignment of his malpractice claim to Reina, in the addendum Kim promised to pursue the malpractice claim to settlement or judgment (with the assistance of Allahyari) and give any proceeds to Reina. Kim, Reina, and Allahyari also entered into a separate contingent fee agreement. In that agreement, Allahyari and Kim promised not to settle the malpractice claim without first consulting Reina. Kim agreed that if he settled the claim without consulting Reina or Allahyari, Kim would pay Allahyari's attorney fees.

¶11 With the addendum in place, Allahyari (now representing Kim) filed Kim's malpractice suit against O'Sullivan in September 2004. O'Sullivan moved for summary judgment on the grounds that the suit was barred by *Kommavongsa* and additionally that Kim could not raise a genuine issue of material fact as to the existence of damages resulting from the alleged malpractice. The trial court granted summary judgment to O'Sullivan and ordered the case dismissed. Kim appeals.

¶12 Kim contends that his suit is not barred by *Kommavongsa* because it is his own direct action against O'Sullivan rather than an action undertaken by an assignee. *Kommavongsa* did not dismiss the assignor's malpractice lawsuit altogether, instead remanding to the trial court so that the assignor could, if he chose, be substituted as the real party in interest and "so that the legal malpractice claim may proceed in normal course as between the proper parties thereto." *Kommavongsa*, 149 Wn.2d at 291. The court did not intend for its ruling to be applied so as to "protect lawyers from the consequences of their own legal malpractice." *Kommavongsa*, 149 Wn.2d at 311. The decision permits assignment of judgments or proceeds from legal malpractice suits to the adversary in the underlying case after the litigation has ended:

> Prohibiting the assignment of legal malpractice claims to an adversary in the same litigation that gave rise to the legal

malpractice claim will not prevent clients from pursuing their own legal malpractice claims to judgment, *and then* assigning their judgments in order to satisfy their own liabilities or submitting to execution upon such judgments. Thus, prohibiting such assignments will not protect lawyers from the consequences of their own legal malpractice.

*Kommavongsa*, 149 Wn.2d at 311 (emphasis added).

¶13 Kim contends he has satisfied *Kommavongsa* because he has assigned only the proceeds rather than the claim itself. But as the above excerpts illustrate, the client must be the real party in interest when the malpractice suit is litigated. Under the terms of the addendum to the agreement between Reina and Kim, Kim is not the real party in interest; Reina is. Reina and his attorney are in complete control of the malpractice lawsuit and only Reina will benefit from a settlement or judgment in the lawsuit. Consequently, it remains in substance a suit on an assigned claim of legal malpractice brought by the adverse parties in the underlying litigation in which the alleged malpractice occurred, and it implicates the same policy concerns that motivated the *Kommavongsa* court to bar such assignments.

¶14 The Connecticut Supreme Court, endorsing and following the rationale of *Kommavongsa*, concluded that an assignment of proceeds similar to the one contained in the Reina-Kim addendum was "made merely to circumvent the public policy barring assignments" because the assignee retained control of the litigation. *Gurski v. Rosenblum & Filan, L.L.C.*, 276 Conn. 257, 885 A.2d 163, 178 (2005). *See also Weiss v. Leatherberry*, 863 So. 2d 368, 372 (Fla. Dist. Ct. App. 2003). We similarly conclude that *Kommavongsa* bars Kim's suit in its present posture because the assignment of proceeds that underpins it is in reality an assignment of the claim.

¶15 To the extent that Kim might have a valid malpractice claim that he could pursue as the real party in interest, the correct remedy under *Kommavongsa* would be a remand, not dismissal. However, in this case dismissal is

justified because even if Kim would now choose to proceed as the real party in interest, he has not produced evidence of damage caused by O'Sullivan's alleged breach.

¶16 A claim for legal malpractice requires proof of damage to the client. *Lavigne*, 112 Wn.2d at 682-83. The purpose of tort damages is to place the plaintiff in the condition he would have been in had the wrong not occurred. *Tilly v. John Doe*, 49 Wn. App. 727, 731-32, 746 P.2d 323 (1987). The measure of damages for legal malpractice is the amount of loss actually sustained as a proximate result of the attorney's conduct. *Tilly*, 49 Wn. App. at 731.

¶17 To ensure that damage awards accurately reflect actual losses and avoid windfalls, the burden is on the plaintiff to show that damages are collectible. *Lavigne*, 112 Wn. App. at 687. For instance, in *Lavigne*, a Washington company hired a Washington law firm to help it collect an Arizona judgment against Arizona residents. The Arizona residents had no unencumbered assets. The company sued the law firm for malpractice after the firm failed to inform the company of the applicable statute of limitations for enforcing the judgment. The trial court granted summary judgment in the law firm's favor because the company produced no evidence showing the judgment was collectible, i.e., that the Arizona residents had unencumbered assets. This court affirmed: "Absent adequate proof of collectibility, the plaintiff could unjustifiably receive a windfall." *Lavigne*, 112 Wn. App. at 687.

¶18 Kim contends that O'Sullivan should have persuaded him to accept the $200,000 settlement offer before it expired, and his failure to do so damaged Kim in an amount measured by the unsatisfied portion of the agreed judgment. His theory is that O'Sullivan prevented him from being able to *avoid* a judgment, whereas in *Lavigne* the malpractice plaintiff claimed that his attorney prevented him from being able to *collect* on a judgment. Nevertheless, the *Lavigne* rationale applies. Kim will never have to pay the unsatisfied amount of the agreed judgment, as Reina has promised not to execute on it. Awarding Kim damages

measured by that judgment would give him an unjustified windfall. The agreed judgment is not a loss actually sustained by Kim as a proximate result of the alleged malpractice.

¶19 In trying to avoid this outcome, Kim argues that the stipulated judgment should serve as a presumptive measure of damages because that remedy is permitted in insurance bad faith cases. For example, if an insurer refuses in bad faith to settle a claim within policy limits and the insured independently negotiates a settlement, the insurer is liable for the settlement even if it exceeds policy limits, to the extent the settlement is reasonable and paid in good faith. This is true even where the insured has assigned the claim to the injured party in exchange for a covenant not to execute. *Besel v. Viking Ins. Co.*, 146 Wn.2d 730, 737, 49 P.3d 887 (2002).

¶20 But *Kommavongsa* unequivocally states that "a stipulated judgment cannot properly serve as an indication of the actual damages, if any there were, as a result of the alleged legal malpractice." *Kommavongsa*, 149 Wn.2d at 308. If Kim's claim against O'Sullivan is a legal malpractice claim, he is not entitled to the benefit of the rules that apply in insurance bad faith cases.

¶21 Kim contends that he is suing O'Sullivan not just for legal malpractice, but also for a new and distinct species of action in which compensation is awarded for "insurer-retained defense counsel bad faith." He claims that an insurer-retained attorney may be held liable for bad faith to the same extent as an insurer and is subject to the same remedies as the insurer. For this proposition, he relies on *Tank v. State Farm Fire & Casualty Co.*, 105 Wn.2d 381, 388, 715 P.2d 1133 (1986). The Supreme Court held in *Tank* that in a reservation of rights case, the potential conflicts of interest between insurer and insured mandate imposing upon the insurer, as part of its duty of good faith, an even higher standard than in other cases. The court also set forth the distinct duties owed to the insured by retained defense counsel in such cases. *Tank*, 105 Wn.2d at 387-89. But in

doing so the court recognized that the responsibilities of attorneys and insurers are distinct and referred to the former as "defense counsel's duties *as an attorney*." *Tank*, 105 Wn.2d at 390 (emphasis added). O'Sullivan owed Kim a duty as his attorney, not as his insurer. There is no cause of action for "insurer-retained defense counsel bad faith." Harm from O'Sullivan's alleged negligence will not be presumed. Because Kim has received Reina's promise not to execute on the agreed judgment, he cannot show he has been harmed by the unsatisfied portion of that judgment.

¶22 Kim contends that even if he is not entitled to presumptive damages as measured by the stipulated judgment, O'Sullivan's alleged malpractice both before and after the Kim-Reina settlement caused damage to his credit rating, reputation, and business opportunities, as well as emotional damages.

¶23 A nonmoving party must assert specific facts to defeat summary judgment, not mere speculation. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Kim's declaration provides the sole evidence of these alleged damages:

3. As part of the settlement agreement with Mr. Reina, I was required to sign a judgment in the amount of $2,875,000 which was filed in Pierce County Superior Court.

4. The judgment damaged my credit rating.

5. During the last ten years I have been a self-employed restaurant and bar owner. The judgment in favor of the Reinas has adversely impacted my business opportunities.

6. I believe that I am known to many if not all of the Korean-American businessmen in South King County and Pierce County. I believe the judgment in favor of the Reinas has caused damage to my reputation among my peers, and in the community.[1]

¶24 There is no indication to what extent the judgment damaged Kim's credit rating, which business opportunities have been lost, or how Kim lost money as a result of his

---

[1] Clerk's Papers at 915-16.

damaged reputation. The declaration is too conclusory to support Kim's claim that he suffered these damages. As to emotional damages, O'Sullivan questions whether they are recoverable at all in attorney malpractice cases. We need not reach that issue here because Kim has provided no evidence that he suffered emotional damages.

¶25 Kim finally contends the trial court erred by failing to grant his motion for partial summary judgment on the issues of duty and breach. This claim is moot. Before reaching the claim, the trial court granted O'Sullivan's motion for summary judgment, and dismissed the case. That correct decision disposed of the entire case.

¶26 Affirmed.

GROSSE and BAKER, JJ., concur.

Review denied at 159 Wn.2d 1018 (2007).