# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| JOHN SOMARAKIS, TRUSTEE OF THE JOHN SOMARAKIS TRUST, | No.  54669-8-II |
| Appellant, | |
| v. | |
| U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT; NORTH STAR TRUSTEE, LLC; a Washington limited liability company, LISA HACKNEY AND JOHN DOE HACKNEY, wife and husband; and RUSHMORE LOAN MANAGEMENT SERVICES, LLC, | UNPUBLISHED OPINION |
| Respondents. | |

PRICE, J. — John Somarakis appeals the superior court's orders dismissing all of his claims against U.S. Bank National Association as Trustee for the RMAC Trust, series 2016-CTT; North Star Trustee, LLC; and Rushmore Loan Management Services, LLC.  We reverse the superior court's order granting summary judgment to U.S. Bank on two of Somarakis' breach of contract claims and duty of good faith claims and granting summary judgment to U.S. Bank and Rushmore on the Consumer Protection Act (CPA), chapter 19.86 RCW, claim as discussed below.  And we direct the superior court to grant summary judgment in favor of Somarakis on his breach of contract claim based on the failure to release the insurance proceeds.  We affirm the remainder of the superior court's orders.  Accordingly, the superior court's orders are affirmed in part and reversed in part, and we remand for further proceedings consistent with this opinion.

FACTS

I. BACKGROUND

In March 2009, John Somarakis received a $900,000 loan from ING Bank, FSB in exchange for an adjustable rate note secured by a deed of trust recorded against Somarakis' real property located in Vancouver. ING Bank then merged with Capital One, National Association and Capital One became the successor in interest.

The deed of trust provided in Section 1 that the lender, U.S. Bank, was not required to apply partial payments to the loan:

> Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. . . . Lender may hold such unapplied funds until the Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.

Clerk's Papers (CP) at 1062-63. Section 11 of the deed of trust also provides how to apply miscellaneous proceeds, like insurance payments, received as a result of damage to the property:

> If Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

CP at 1065. And finally, Section 2 of the deed of trust provides the order of priority for payments:

Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

CP at 1063.

In July 2016, Somarakis defaulted on the loan. In November 2016, a building on the property securing Somarakis' loan suffered fire damage. Somarakis received insurance funds for the repairs to the property totaling $28,428.36. In July 2017, Somarakis forwarded the insurance funds to Capital One to be applied to the loan, but Capital One placed the funds in a restricted escrow account because the loan was in default.

On October 13, 2017, Capital One sold Somarakis' loan to U.S. Bank. On November 9, 2017, Rushmore sent Somarakis notice of the sale of his loan. On November 14, 2017, Capital One sent Somarakis notice that Rushmore would become the new loan servicer effective December 1, 2017. On December 1, 2017, the $28,428.36 in insurance funds paid to Capital One was transferred to Rushmore, and Rushmore continued to hold the amount in a restricted escrow account.

No. 54669-8-II

On December 6, 2017, North Cascade Trust, the original trustee, sent Somarakis a notice of default. The record does not indicate what, if any, further action was taken following the notice of default. On April 27, 2018, North Star was appointed as successor trustee of the deed of trust.

In August 2018, North Star issued an updated notice of default to Somarakis. The notice of default stated that U.S. Bank had declared Somarakis in default and gave the reasons for the alleged default.

Between February and July 2018, Somarakis wired multiple payments to Rushmore attempting to bring his loan current. However, all of the wire payments were returned to Somarakis without explanation.

On December 14, 2018, Somarakis filed a complaint against U.S. Bank, Rushmore, and North Star.[1] Somarakis alleged the following claims:

1. Violation of Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, against Rushmore and North Star;

2. Defamation against U.S. Bank, Rushmore, and North Star;

3. Outrage against U.S. Bank, Rushmore, and North Star;

4. Breach of Contract against U.S. Bank;

5. Violation of the CPA against U.S. Bank, Rushmore, and North Star;

6. Violation of Fair Credit Reporting Act, chapter 19.182 RCW, against U.S. Bank and Rushmore;

7. Negligence against U.S. Bank, Rushmore, and North Star;

8. Breach of duty of good faith against North Star;

9. Declaratory judgment that he was not in default; and

---

[1] Somarakis also included Lisa Hackney as a defendant. Lisa Hackney was dismissed as a defendant by a stipulated agreed order.

4

10.  Injunction restraining the nonjudicial foreclosure sale.

CP at 8-12.

On May 31, 2019, the superior court granted Somarakis' motion to restrain the pending trustee's sale of the property.  Following that order, Somarakis began depositing funds into the court registry.  On September 23, 2019, the parties filed a joint stipulated motion to release the funds in the court registry.  The superior court granted the motion and ordered $170,804.78 dollars released to Rushmore.  The remaining balance in the court registry was distributed to Somarakis. In October 2019, Rushmore applied the insurance funds to the amount released from the court registry to bring the loan current.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. SOMARAKIS' MOTION

On January 24, 2020, Somarakis filed a motion for summary judgment.  Somarakis argued that U.S. Bank breached its contract with Somarakis by failing to release the funds in restricted escrow, charging fees that were not due, and refusing to accept the wire transfers made by Somarakis.  Somarakis additionally argued that U.S. Bank violated the duty of good faith.

Somarakis also asserted a CPA claim against all defendants.  Specifically, Somarakis argued that North Star, U.S. Bank, and Rushmore all engaged in unfair and deceptive acts by demanding Somarakis pay charges, costs, penalties, or fees that were not due and by refusing to release the insurance proceeds.  Somarakis' summary judgment motion claimed that North Star violated the CPA by violating the "Deed of Trust Act" (DTA), chapter 61.24 RCW, Rushmore violated the CPA by violating the Consumer Loan Act, chapter 31.04 RCW, and both Rushmore

5

and North Star violated the Collection Agency Act (CAA), chapter 19.16 RCW. Finally, Somarakis raised arguments related to the claims of outrage and defamation.

In addition to the facts above, Somarakis' pleadings included detailed facts about a series of account statements, his attempts to pay those statements, and defendants' refusal to accept those payments. For example, Rushmore sent Somarakis a statement dated February 9, 2018, informing him that the amount due by March 1, 2018, totaled $107,769.34. If not paid, a $174.79 late fee would be charged after March 16, 2018. The statement noted that with the late amount, the total amount owing would be $107.944.13. On March 20, 2018, Somarakis wired Rushmore $79,340.98. This amount together with the insurance proceeds totaled $107,769.34. On March 30, 2018, Rushmore returned the $79,340.98 to Somarakis without any explanation about why it refused to accept the payment.

Rushmore sent Somarakis a statement dated March 9, 2018, stating the "Amount Due" as $112,967.80. CP at 734. If not paid, the $174.79 late fee would be charged after April 16, 2018. The statement noted that with the late fee, the total amount owing would be $113,142.59. Somarakis sent a total of $84,539.44. This amount, together with the escrow amounts noted on page three of the statement, totaled $112,967.80. The amount Somarakis sent did not include the late fee. On May 16, 2018, Rushmore returned the $84,539.44 without explanation.

Rushmore sent Somarakis a statement dated May 11, 2018, informing him that he owed $123,364.72 by June 1, 2018. If not paid, a $174.79 late fee would be charged after June 16, 2018. The statement noted that with the late fee, the total "Late [Payment] Amount" due would be $123,539.51. CP at 433. On May 24, 2018, Somarakis wired $89,839.44 to Rushmore. This amount with the insurance proceeds, totaled $118,267.80. On June 11, 2018, Rushmore returned

6

the $89,839.44 to Somarakis without notification that it refused to accept the payment or explanation for why the payment was rejected.

On June 18, 2018, Somarakis sent $94,863.11 to Rushmore. This together with the insurance proceeds totaled $123,291.47. On July 13, 2018, Rushmore returned the $94,863.11 payment without any explanation for why the payment was rejected.

On July 25, 2018, Somarakis sent $99,726.11 to Rushmore. Rushmore did not apply the payment to Somarakis' loan. And Rushmore did not immediately return the payment to Somarakis. Instead, Rushmore held the funds until November 19, 2018, 117 days later. Rushmore did not provide any explanation for why it was rejecting the payment. Further, Rushmore did not explain why the payment was held for 117 days before being returned.

B. U.S. BANK AND RUSHMORE'S MOTION

On February 28, 2020, U.S. Bank and Rushmore cross-moved for summary judgment on all of Somarakis' claims. U.S. Bank and Rushmore's main argument was that, even if it had applied the insurance proceeds with Somarakis' wire transfers, Somarakis still would have failed to make a payment to bring the loan current.

To support its motion, and to counter Somarakis' assertions that he repeatedly paid enough to bring his loan current, U.S. Bank and Rushmore included detailed, undisputed information showing that Somarakis never submitted any payments that would have brought the loan current, even if it had applied the insurance proceeds.

U.S. Bank and Rushmore also provided the mortgage statements. The mortgage statements included an "Important Information" section which stated,

> Amount Due: IF YOU ARE IN FORECLOSURE OR BANKRUPTCY, the amount
> listed here may not be the full amount necessary to bring your account current. To

> obtain the most up-to-date amount due information, please contact us at the number listed on this statement.

CP at 728 (boldface omitted). The mortgage statement also included contact information so the borrower could obtain up-to-date payment information on the loan. And the statement clearly identified late fees that would be applied if the payment was not made by a certain date.

C.  NORTH STAR'S MOTION

On February 27, 2020, North Star also filed a cross-motion for summary judgment. North Star argued that it did not violate the CPA because it did not breach the duty of good faith under the DTA. North Star also argued that it was not subject to the CAA. And North Star argued that Somarakis' claims for negligence, outrage, and defamation failed as a matter of law.

North Star supported its motion with a declaration from Lisa Hackney, the vice president of trustee operations at North Star. Hackney declared that she had received correspondence from Somarakis claiming that the notice of default was false because Somarakis was current on the loan. That correspondence was forwarded to Rushmore. Rushmore responded to North Star by sending a copy of its response letter which claimed that the insurance proceeds would not be released until a claims package was completed. Hackney explained that because Somarakis had failed to complete paperwork for the claim package required to release the insurance proceeds and had failed to make payments sufficient to bring the loan current, the foreclosure and notice of default were proper.

### III.  SUPERIOR COURT ORDERS, JUDGMENT, AND ATTORNEY FEES

The superior court entered an order granting U.S. Bank and Rushmore's motion for summary judgment and dismissing the following claims against U.S. Bank and Rushmore: (1) violation of the CAA, (2) defamation, (3) outrage, (4) breach of contract, (5) violation of the

CPA, (6) negligence, (7) breach of the duty of good faith, (8) declaratory judgment, and (9) injunction.[2] The superior court also denied Somarakis' motion for summary judgment against U.S. Bank and Rushmore.

The superior court also entered an order denying Somarakis' motion for summary judgment on all claims against North Star and granting North Star's cross-motion for summary judgment. The order specifically dismissed Somarakis' claims against North Star for violation of the CPA, violation of the CAA, negligence, outrage, and defamation with prejudice.

The superior court granted U.S. Bank's and Rushmore's request for attorney fees, although U.S. Bank did not specifically claim grounds for an award of attorney fees in either its motion for summary judgment or its response to Somarakis' motion for summary judgment. The superior court also granted North Star's request for attorney fees even though North Star did not allege specific grounds to support the award

Somarakis appeals.

## ANALYSIS

### I. LEGAL PRINCIPLES

We review summary judgment orders de novo. *Washington Fed. v. Azure Chelan, LLC*, 195 Wn. App. 644, 652, 382 P.3d 20 (2016). Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c). " 'A material fact is one upon which the outcome of the litigation depends.' " *Id.* at 652 (quoting *Kim v. O'Sullivan*, 133 Wn. App. 557, 559, 137 P.3d 61 (2006)). "Mere allegations or

---

[2] Somarakis' first cause of action actually was a claim under the Fair Debt Collection Practices Act. He did not assert a CAA claim in his complaint.

conclusory statements of facts unsupported by evidence do not sufficiently establish such a genuine issue." *Discovery Bank v. Bridges*, 154 Wn. App. 722, 727, 226 P.3d 191 (2010). We review facts and inferences in the light most favorable to the non-moving party. *Wash. Fed.*, 195 Wn. App. at 652.

We may affirm an order granting summary judgment on any grounds supported by the record. *Blue Diamond Group, Inc. v. KB Seattle 1, Inc.*, 163 Wn. App. 449, 453, 266 P.3d 881 (2011). And, we may order summary judgment entered in favor of the opposing party when there are no genuine issues of material fact and the opposing party is entitled to judgment as a matter of law. *Estate of Spahi v. Hughes-Northwest, Inc.*, 107 Wn. App. 763, 776-77, 27 P.3d 1233 (2001).

We also review questions of statutory interpretation de novo. *Money Mailer, LLC v. Brewer*, 194 Wn.2d 111, 116, 449 P.3d 258 (2019). The primary purpose of statutory interpretation is to determine and enforce legislative intent. *Id.* at 117. " '[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.' " *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 723, 406 P.3d 1149 (2017) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).

## II. CLAIMS AGAINST U.S. BANK AND RUSHMORE

Somarakis argues that the superior court erred by granting U.S. Bank and Rushmore's motion for summary judgment and denying his own motion for summary judgment. Somarakis raises arguments regarding U.S. Bank's breach of contract, U.S. Bank's breach of the duty of good faith, U.S. Bank's and Rushmore's violation of the CPA, and Rushmore's violation of the CAA. Somarakis fails to present argument regarding the other claims dismissed in the superior court's order granting U.S. Bank and Rushmore's motion for summary judgment, and, therefore, he has

abandoned them. *See* RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (we do not consider issues unsupported by argument or citation to authority).

A.  BREACH OF CONTRACT CLAIM

1.  Acceptance of Payments

Somarakis argues that the superior court erred by granting U.S. Bank's motion for summary judgment on the breach of contract claim because U.S. Bank refused to accept Somarakis' payments. We affirm the superior court's order on summary judgment regarding all payments except for the July 2018 payment that Somarakis alleged was held for 117 days. Because there was a genuine issue of material fact as to whether holding the payment for 117 days was unreasonable under the terms of the deed of trust, we reverse the superior court's order granting summary judgment on this claim.

We rely on general contract law principles to interpret provisions in a deed of trust. *U.S. Bank Nat'l Ass'n. v. Roosild*, 17 Wn. App. 2d 589, 598, 487 P.3d 212, *review denied*, 198 Wn.2d 1026 (2021). When extrinsic evidence is unnecessary for interpretation, we review contract interpretation de novo. *U.S. Bank*, 17 Wn. App. 2d at 598.

Here, Somarakis does not identify any contractual provision that U.S. Bank violated by refusing to accept his payments. Section 1 of the deed of trust, in fact, permits insufficient payments to be returned:

> Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. . . . Lender may hold such unapplied funds until

11

> the Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.

CP at 1062-63. Because none of the payments that Somarakis sent were actually full payments, U.S. Bank was not required to accept the partial payments under the terms of the deed of trust.

Somarakis argues that the amounts he sent, combined with the insurance proceeds being held in the restricted escrow account, were sufficient to bring the loan current. But U.S. Bank provided evidence that, even combined with the insurance proceeds, Somarakis' payments were not sufficient to bring the loan current because of fees and interests for late payments.

For example, the first disputed payment made by Somarakis was $79, 340.98 on March 20, 2018. The amount due by March 1, 2018 was $107,769.34. The mortgage statement informed Somarakis that a late fee of $174.79 would be charged after March 16, 2018. The payment combined with the insurance proceeds of $28,428.36 totaled $107,769.34, which was less than the amount due on March 20, the date the payment was made, because it did not account for the late fee. Therefore, the payment, even combined with the insurance proceeds, was not sufficient to bring the loan current and U.S. Bank was not obligated to accept it under the terms of the deed of trust.

Somarakis does not dispute any of U.S. Bank's evidence regarding the short payments. Instead, his argument appears to be that because the total amount he transferred equaled the amount on the face of the mortgage statement, U.S. Bank was contractually obligated to accept the payment. However, Somarakis has not identified any provision in the deed of trust that would compel this result. Therefore, there is no genuine issue of material fact regarding Somarakis' failure to submit payments sufficient to bring the loan current.

The exception is the payment from July 2018 that was held for 117 days. Although Somarakis has not shown that U.S. Bank breached the contract by returning his partial payments, he has shown that there was a genuine issue of material fact as to whether failing to return the July 2018 payment for 117 days was unreasonable, and, therefore, a breach of the contract.

Section 1 of the deed of trust allowed the lender to hold unapplied partial payment for "a reasonable period of time" for the borrower to bring the payments on the loan current. CP at 1062.

Here, U.S. Bank, through Rushmore, held the July 2018 payment for 117 days, not returning the payment until November. There is a genuine issue of material fact whether holding the July 2018 payment for this long was "a reasonable period of time" under Section 1 of the deed of trust. CP at 1062. Therefore, the superior court erred by granting U.S. Bank's motion for summary judgment on whether U.S. Bank breached the deed of trust by failing to return the July 2018 payment in a reasonable amount of time.

2. Refusal to Release Insurance Funds

Somarakis argues that the superior court erred by granting U.S. Bank's motion for summary judgment on the breach of contract claim based on U.S. Bank's failure to promptly release the insurance funds from the restricted escrow account. We agree.

Section 11 of the deed of trust provides:

> If Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due,

with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

CP at 1065. Section 2 of the deed of trust states:

Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

CP at 1063. And, as noted above, Section 1 of the deed of trust allowed for the return of partial payments.

Somarakis' complaint asserted that because an inspection of the property did not occur promptly, then under these provisions, the insurance proceeds should have been applied to the debt, not held in an escrow account. However, in its briefing, U.S. Bank argues, regardless of the timeliness of any inspection on the property, these three provisions of the deed of trust, read together, demonstrate that U.S. Bank was not required to release the insurance proceeds from the restricted escrow account until Somarakis tendered sufficient funds to bring the loan current. And because Somarakis never paid a sufficient amount to bring the loan current, U.S. Bank was never required to release the insurance proceeds from the restricted escrow account. This is an incorrect reading of Section 11.

14

Under Section 11, insurance proceeds shall either be applied to restoration and repair of the property or they shall be applied to the amount secured by the deed of trust. When the insurance proceeds are not applied to restoration and repair they "shall be applied to the sums secured by this Security Instrument, whether or not then due." CP at 1065. This language indicates that the insurance proceeds are applied separately from periodic payments that are otherwise made. Section 11's clear directive to U.S. Bank to apply the insurance proceeds to the "sums secured by this Security Instrument" is inconsistent with U.S. Bank's argument that it has the discretion to refuse to apply the proceeds until Somarakis brings the debt current.

To avoid this conclusion, U.S. Bank attempts to bootstrap the discretion it possesses to refuse partial payments from Sections 1 and 2 into Section 11 insurance proceeds. U.S. Bank cites the final sentence of Section 11 which states, "All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided in Section 2." This language, however, is limited to prescribing the "order" of application of the proceeds; it does not incorporate all of Section 2, nor, by implication, the general ability to return payments from Section 1, into the treatment of insurance proceeds. If not used for restoration or repair of damaged property after prompt inspection, Section 11 requires the proceeds to be applied to the debt. Therefore, U.S. Bank has not shown that it was entitled to judgment as a matter of law on this breach of contract claim for failure to release insurance proceeds, and the superior court erred by granting U.S. Bank's motion for summary judgment on this claim.

We hold that as a matter of law, U.S. Bank breached the contract by holding the insurance proceeds from July 2017, until it released them to bring the loan current in October 2019. Capital One had already completed an inspection of the property, and Capital One should have applied the

insurance funds to the loan as required by Section 11, as explained above. After purchasing the loan from Capital One, U.S. Bank also continued to hold the funds without applying them to the loan as required by Section 11. By continuing to hold the insurance funds in a restricted escrow account, U.S. Bank breached the deed of trust. Therefore, Somarakis was entitled to summary judgment on this claim.

We reverse the superior court's order granting U.S. Bank's motion for summary judgment on the breach of contract claim based on the failure to release the insurance proceeds. We remand for the superior court to enter summary judgment in favor of Somarakis on this claim and for further proceedings to determine damages.

B. BREACH OF DUTY OF GOOD FAITH

Somarakis argues that the superior court erred by granting U.S. Bank's motion for summary judgment on the breach of duty of good faith claim because U.S. Bank failed to accept Somarakis' payments. We agree.

Every contract includes an implied duty of good faith and fair dealing. *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991); RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a (1981). The duty of good faith "requires only that the parties perform in good faith the obligations imposed by their agreement." *Badgett*, 116 Wn.2d at 569. The duty of good faith neither requires that a party accept a material change to the agreement nor injects substantive terms into the agreement. *Id.*

"The duty of good faith requires 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Edmonson v. Popchoi*, 172 Wn.2d 272, 280, 256 P.3d 1223 (2011) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205). Our

Supreme Court has relied on the *Restatement (Second) of Contracts* for defining the scope of the duty of good faith. *Edmonson*, 172 Wn.2d at 280. The *Restatement (Second) of Contracts* provides some illustration of good faith performance:

> Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

§ 205(d). A recognized type of bad faith that violates the duty of good faith is "interference with or failure to cooperate in the other party's performance." *Id.*

Although the terms of the deed of trust did not require U.S. Bank to accept the partial payments that Somarakis made on his loan, U.S. Bank did have a duty to cooperate with Somarakis' attempts to pay his loan. Here, there are genuine issues of material fact regarding whether U.S. Bank breached its duty to cooperate. A reasonable fact finder could find that Somarakis was trying to pay his loan by making payments every month which were close to the amount due, especially considering the insurance funds held in restricted escrow. But instead of communicating with Somarakis to try to explain how to bring the loan current or why the payments continued to be rejected, U.S. Bank and Rushmore did nothing but reject the payments and then continue to impose interest and late fees. The common purpose of the parties to the loan was to pay back the loan, and Somarakis was justified in expecting that U.S. Bank would cooperate in Somarakis' attempts to pay what was due on the loan. Therefore, there is a genuine issue of material fact regarding whether U.S. Bank interfered and failed to cooperate with Somarakis' attempts to pay.

The superior court erred by granting U.S. Bank's motion for summary judgment on the breach of the duty of good faith claim. Accordingly, we reverse the superior court's order granting

summary judgment on the breach of good faith claim and remand for further proceedings consistent with this opinion.

## C. CPA CLAIM

Somarakis argues that the superior court erred by granting U.S. Bank and Rushmore's motion for summary judgment on his CPA claim. We agree.

To prevail on a CPA action, the plaintiff must establish five elements: " '(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation.' " *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 782, 295 P.3d 1179 (2013) (quoting *Hangman Ridge Training Stables, Inc., v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)). A claim "may be predicated upon a per se violation of a statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Id.* at 787.

Here, there are genuine issues of material fact regarding whether various actions taken by U.S. Bank and Rushmore could be considered unfair or deceptive. For example, the mortgage statements contained an amount due by a certain date. In addition to the amount due, the mortgage statements also included an "Important Information" section stating that the amount in the statement may not be accurate if the account was in foreclosure or bankruptcy. CP at 728. The mortgage statement also included phone numbers for the borrower to obtain up-to-date payment information on the loan.

Although the mortgage statement did contain information on how to obtain up-to-date payment information, there is a genuine issue of material fact as to whether a substantial portion

of the public would be misled by the statement as a whole. For example, because the instructions to "call" for updated payment amounts were solely tied to being in "Foreclosure or Bankruptcy," a portion of the public might not understand that the amounts listed on their mortgage statement were not accurate because, although they were in default or behind on payments, they were not formally in foreclosure or bankruptcy. Regardless of the legal, technical definition of foreclosure, a substantial portion of the public may not understand that the bank considers default a step in the foreclosure process that requires contact with the bank for up-to-date payment information. Because there was a genuine issue of material fact as to whether the mortgage statements would mislead a substantial portion of the public, the superior court erred in granting summary judgment on Somarakis' CPA claim.

Furthermore, several additional actions by U.S. Bank and Rushmore in this case could create a genuine issue of material fact regarding unfair or deceptive practices. For example, there is a genuine issue of material fact as to whether failure to communicate with a party who is clearly making regular attempts to pay their loan is an unfair practice. Further, U.S. Bank's failure to release the insurance proceeds and holding of a payment for 117 days before returning it could be considered unfair practices. Because there are genuine issues of material fact regarding whether U.S. Bank and Rushmore engaged in unfair or deceptive practices, we reverse the superior court's order granting U.S. Bank and Rushmore's motion for summary judgment on Somarakis' CPA claim.[3]

---

[3] Somarakis also claims that U.S. Bank and Rushmore violated the Consumer Loan Act, which states that if a payment is received but not credited, a residential loan servicer must notify the borrower of the reason the payment was not credited. RCW 31.04.290(1)(b). We note that Somarakis' complaint only pled a single CPA claim without clearly pleading what the basis for the claim is. Because there are genuine issues of material fact and we reverse regarding the CPA

D.  COLLECTION AGENCY ACT CLAIMS AGAINST RUSHMORE

Somarakis also argues that the superior court erred by granting Rushmore's motion for summary judgment on his claim against Rushmore for violations of the CAA.  Rushmore argues that the CAA does not apply to it because it is not a collection agency.  We agree with Rushmore.

Collection agencies are subject to the CAA and must be properly licensed to perform collection activities in Washington.  RCW 19.16.110; RCW 19.16.250(1).  A "collection agency" is defined as "[a]ny person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due to another person."  RCW 19.16.100(4)(a).  However, collection agency does not include

> Any person whose collection activities are carried on in his, her, or its true name and are confined and are directly related to the operation of a business other than that of a collection agency, such as but not limited to: Trust companies; savings and loan associations; building and loan associations; abstract companies doing an escrow business; real estate brokers; property management companies collecting assessments, charges, or fines on behalf of condominium unit owners associations, associations of apartment owners, or homeowners' associations; public officers acting in their official capacities; persons acting under court order; lawyers; insurance companies; credit unions; loan or finance companies; mortgage banks; and banks.

RCW 19.16.100(5)(c).

Although residential mortgage loan servicers are not specifically excluded under RCW 19.16.100(5)(c), Rushmore argues that its business operation is a loan or finance company.  In a deposition, Anthony Younger, Rushmore's legal proceedings representative, explained that Rushmore's business activities consist of "loss mitigation, underwriting, writing new loans and

---

claim, we leave it to the superior court's discretion to determine the appropriate scope of Somarakis' CPA claim on remand.  *See* CR 15.

papers for modifications" in addition to foreclosures. CP at 1258. Based on this description, Rushmore's loan servicing activities are directly related to its business as a loan company.

Furthermore, it appears that the legislature intended to regulate activities related to mortgage loans separately from collections agencies. The legislature has explicitly excluded all other actors related to mortgages and foreclosures from the CAA, and, therefore, it makes sense that the legislature intended to include residential mortgage loan servicers in loan and finance companies. And the legislature has separately regulated residential mortgage loan servicers under the Consumer Loan Act. See RCW 31.04.035, .290-.310. The legislature would not have separately licensed and regulated residential mortgage loan servicers under the Consumer Loan Act if it intended them to be licensed and regulated under the CAA.

Therefore, we agree that the CAA does not apply to Rushmore. The superior court properly granted Rushmore's motion for summary judgment on the CAA claim against Rushmore. We affirm this portion of the superior court's order.

### III. CLAIMS AGAINST NORTH STAR

Somarakis argues that the superior court erred by granting North Star's motion for summary judgment. Somarakis raises arguments regarding the CPA claim, the CAA claim, and the defamation claim. Somarakis has abandoned his claims of negligence and outrage by failing to raise them on appeal.

### A. CPA CLAIM

Somarakis argues that the superior court erred by granting North Star's motion for summary judgment because North Star violated the CPA by failing to act impartially and failing to conduct an investigation as required by the DTA. We disagree.

Violation of the DTA "constitutes an actionable claim for damages under the CPA." *Winters v. Quality Loan Serv. Corp. of Wash., Inc.*, 11 Wn. App. 2d 628, 642, 454 P.3d 896 (2019). Our Supreme Court has explained,

> RCW 61.24.010(4) imposes a duty of good faith on the trustee toward the borrower, beneficiary, and grantor. "[U]nder our statutory system, a trustee is not merely an agent for the lender or the lender's successors. Trustees have obligations to all of the parties to the deed, including the homeowner." This duty requires the trustee to remain impartial and protect the interests of all parties. . . . A foreclosure trustee must "adequately inform" itself regarding the purported beneficiary's right to foreclose, including, at a minimum, a "cursory investigation" to adhere to its duty of good faith. A trustee does not need to summarily accept a borrower's side of the story or instantly submit to a borrower's demands. But a trustee must treat both sides equally and investigate possible issues using its independent judgment to adhere to its duty of good faith.

*Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 787, 336 P.3d 1142 (2014) (first alteration in original) (quoting *Bain v. Metro Mortgage Group, Inc.*, 175 Wn.2d 83, 93, 285 P.3d 34 (2012); *Walker v. Quality Loan Serv. Corp. of Wash.*, 176 Wn. App. 294, 309-10, 308 P.3d 716 (2013)).

Here, North Star did not breach its duty to act impartially or perform an investigation. When Somarakis informed North Star that he believed the loan was current, North Star informed Rushmore of the concerns and determined that there was an issue involving the insurance proceeds and that Somarakis had still failed to make payments sufficient to bring the loan current. The dispute regarding payment was between Somarakis and Rushmore, not Somarakis and North Star. North Star properly exercised its independent judgment and contacted Rushmore to determine whether Somarakis had, in fact, made payments to bring the loan current, which Somarakis had not. Therefore, North Star did not violate the DTA by failing to sufficiently investigate Somarakis' claims, and the superior court properly granted North Star's motion for summary judgment on the claim that North Star violated the CPA by violating the DTA.

B. COLLECTION AGENCY ACT CLAIM

Somarakis argues that the superior court erred by granting North Star's motion for summary judgment because North Star violated the CAA by failing to register as a collection agency, threatening to sell Somarakis' property, improperly charging fees, and communicating with Somarakis after Somarakis retained counsel. We disagree.

As discussed above, collection agencies are subject to the CAA and must be properly licensed to perform collection activities in Washington. RCW 19.16.110; RCW 19.16.250(1). However, the definition of collection agency specifically excludes trust companies. RCW 19.16.100(5)(c). And Division One of this court specifically held that North Star was not subject to the CAA because trustees in nonjudicial foreclosures are specifically excluded under the CAA:

> The fact that North Star's foreclosure activities constitute the collection of a debt does not negate its statutory exclusion under RCW 19.16.100(5)(c). The exclusion extends to anyone engaged in "collection activities" as long as its operations are done in its true name and are confined and directly related to the operation of a trust company. As the Supreme Court noted in *Obduskey v. McCarthy & Holthus LLP*, ___ U.S. ___, 139 S. Ct. 1029, 1036, 203 L. Ed. 2d 390 (2019), "foreclosure is a means of collecting a debt." It is immaterial that North Star notified Diaz it was attempting to collect a debt. What is important is that North Star conducts no debt collection activities other than acting as a trustee in nonjudicial foreclosure proceedings under written deeds of trust. These activities render it exempt from registration under the [CAA].

*Diaz v. North Start Tr., LLC*, 16 Wn. App. 2d 341, 363, 481 P.3d 557, *review denied*, 198 Wn.2d 1002 (2021).

Similarly, here, North Star was acting solely as a trustee in a nonjudicial foreclosure and was exempt from the requirements of the CAA. Because North Star was exempt from the requirements of the CAA, the superior court properly granted North Star's motion for summary judgment on Somarakis' CAA claim.

## C.  DEFAMATION CLAIM

Somarakis argues that the superior court erred by granting North Star's motion for summary judgment because North Star committed defamation by posting a false notice of default and false notice of trustee's sale.  We disagree.

"To establish a prima facie defamation claim, the plaintiff must show (1) that the defendant's statement was false, (2) that the statement was unprivileged, (3) that the defendant was at fault, and (4) that the statement proximately caused damages."  *Alpine Indus. Computers, Inc. v. Cowles Publ'g Co.*, 114 Wn. App. 371, 378, 57 P.3d 1178 (2002).

Here, Somarakis cannot show that the notice of default posted by North Star was false. The notice of default stated that U.S. Bank had declared Somarakis in default and the reasons for the alleged default.  These were true statements based on the information North Star had received from U.S. Bank.  And, as explained above, even if Rushmore had applied the insurance money to Somarakis' payments, he did not pay a sufficient amount to bring the loan current.  Therefore, North Star did not make a false statement and Somarakis cannot make a prima facie case for defamation.  Accordingly, the superior court did not err by granting North Star's motion for summary judgment.

## IV.  ATTORNEY FEES

## A.  ATTORNEY FEES AT SUPERIOR COURT

Somarakis argues that the superior court erred by granting attorney fees to U.S. Bank, Rushmore, and North Star.  We agree and remand to the superior court to reconsider the requests for attorney fees.

We use a two-step inquiry when reviewing an award of attorney fees. *Bill & Melinda Gates Found. v. Pierce*, 15 Wn. App. 2d 419, 446, 475 P.3d 1011 (2020), *review denied*, 197 Wn.2d 1006 (2021). We review the legal basis for awarding attorney fees de novo. *Id.* at 446-47. Then, we review the decision to award attorney fees and the reasonableness of the award for an abuse of discretion. *Id.* at 447.

Here, the record does not establish any legal basis for awarding attorney fees to U.S. Bank, Rushmore, or North Star. Therefore, the superior court's orders granting attorney fees should be reversed. However, on remand, the superior court should consider the requests for attorney fees and determine whether the parties requesting attorney fees are entitled to an award of attorney fees, and, if so, the amount of the attorney fees award.

B. ATTORNEY FEES ON APPEAL

All parties have requested attorney fees on appeal. RAP 18.1(a) provides for an award of attorney fees on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review."

With regard to Somarakis', U.S. Bank's and Rushmore's requests for attorney fees on appeal, we do not consider Somarakis, U.S. Bank, or Rushmore a prevailing party, and any request for attorney fees on appeal is denied.

North Star requests attorney fees on appeal as a prevailing party under RAP 18.1 and RCW 4.84.010. RAP 18.1(a) provides for an award of attorney fees on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." However, RCW 4.84.010 does not provide for an award of attorney fees, it only allows a prevailing party to

recover costs. Because North Start is a prevailing party, it is entitled to recover costs, but we deny the request for attorney fees.

CONCLUSION

We reverse the superior court's order granting summary judgment to U.S. Bank on two of the breach of contract claims and the duty of good faith claim and granting summary judgment to U.S. Bank and Rushmore on the CPA claim as discussed above. We direct the superior court to grant summary judgment in favor of Somarakis on his breach of contact claim against U.S. Bank based on the failure to release the insurance proceeds. We affirm the remainder of the superior court's orders. Accordingly, the superior court's orders are affirmed in part and reversed in part, and we remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

LEE, C.J.

MAXA, J.